THE STATE OF NEW YORK, Appellant, *v.* THE COUNTY OF KINGS et al., Respondents.

*It seems* that where a county has neglected to pay its equal proportion of the state taxes, the duty rests upon the state government to adopt the necessary means to compel the performance of this duty, irrespective of the time which has elapsed since the neglect occurred.

*It seems* also, the power of the legislature to levy taxes is unlimited, save as limited by the Constitution, and no *laches* or Statute of Limitations can bar it from the exercise of that power when justice or equity requires it.

As to whether the legislature can compel citizens to appear before the Board of Claims and litigate claims made by the state or any other party against them, *quære.*

As the act of 1884 (Chap. 318, Laws of 1884), authorizing and directing the Board of Claims to hear and determine claims of the state, for balances due on state tax accounts on the books of the comptroller, from certain counties to the state, does not in terms purport to amend the acts creating that court, and as it does not of itself authorize an appeal to this court from an award made under it, no right of appeal exists.

*It seems* no appeal lies to this court from any tribunal, unless authorized by statute. ˙

*It seems* that the act of 1873 (Chap. 643, Laws of 1873), relevying the tax attempted to be imposed under the act of 1872 (Chap. 734, Laws of 1872), which had been adjudged by the courts to be void, also providing that payments made by counties under the prior act, shall be accepted as satisfaction, and requiring the board of supervisors of Kings county to levy its proportion of said tax, in addition to all other taxes levied for the next fiscal year is constitutional, as is also the act of 1873 (Chap. 760, Laws of 1873), requiring the defaulting counties to pay interest on the amounts they would have been required to pay under the act of 1872, if it had been valid.

(Argued December 17. 1890; decided January 13, 1891.)

APPEAL from an award of the Board of Claims, entered September 11, 1889, awarding the complainant nothing upon a claim filed pursuant to the act of 1884 (Chap. 318, Laws of 1884), authorizing said board to hear, determine and audit certain claims of the state against certain counties therein named.

The facts, so far as material, are stated in the opinion.

*Charles F. Tabor, Attorney-General,* for appellant. The legislature had the power to create the Board of Claims and to confer upon it all the powers attempted to be conferred by chapter 318 of the Laws of 1884. (*Cole* v. *State,* 102 N. Y. 51; Laws of 1885, chap. 238 ; *Darlington* v. *Mayor, etc.,* 31 N. Y. 204.) The legislature itself, in the exercise of its sovereign power, might have arbitrarily determined by legislative enactment, without the intervention of an auditor or auditing board, the amount of indebtedness of Kings county for taxes, and levied the same directly upon the property of the county and directed its payment. This would be only a valid exercise of the taxing power of the state. (*People* v. *Mayor, etc.,* 4 N. Y.

419 ; *Town of Guilford* v. *Bd. Suprs.*, 13 id. 143 ; *Brewster* v. *City of Syracuse*, 19 id. 118 ; *Meech* v. *City of Buffalo*, 29 id. 205 ; *Darlington* v. *Mayor, etc.*, 31 id. 180, 190 ; *Howell* v. *City of Buffalo*, 37 id. 272 ; *Gordon* v. *Cornes*, 47 id. 612 ; *People ex rel.* v. *Dayton*, 55 id. 381, 389 ; *Town of Duanesburgh* v. *Jenkins*, 57 id. 189 ; *People* v. *Ingersoll*, 58 id. 21, 29 ; *People* v. *Tweed*, 63 id. 207 ; *Brown* v. *Mayor, etc.*, Id. 245 ; *Weismer* v. *Village of Douglas*, 64 id. 98, 99 ; *People ex rel.* v. *Bd. of Suprs.*, 67 id. 115 ; *Spencer* v. *Merchant*, 125 U. S. 355 ; *M. N. Bank* v. *Bd. of Suprs.*, 3 Hun, 156 ; 62 N. Y. 629 ; *Palmer* v. *McMahon*, 133 U. S. 608.) The Statute of Limitations has no application to any question involved in this claim. But, if it were otherwise, the board of claims erred in finding "that the claim of the state of New York herein is barred by the Statute of Limitations." (*Ensign* v. *Bd. of Suprs.*, 25 Hun, 20 ; *Brady* v. *Bd. of Suprs.*, 10 N. Y. 260 ; *Martin* v. *Bd. of Suprs.*, 29 id. 645 ; *People* v. *Bd. of Suprs.*, 45 id. 199 ; *Taylor* v. *Mayor, etc.*, 82 id. 11 ; *Thompson* v. *Allen Co.*, 115 U. S. 550 ; *Stoughton* v. *Baker*, 4 Mass. 528 ; *People* v. *Gilbert*, 10 Johns. 226 ; *U. S.* v. *Kirkpatrick*, 9 Wheat. 735 ; *U. S.* v. *N. R. Co.*, 118 U. S. 125 ; *Mayor, etc.*, v. *Colgate*, 12 N. Y. 140 ; *Fisher* v. *Mayor, etc.*, 67 id. 78 ; *Corkings* v. *State*, 99 id. 499 ; *O'Hara* v. *State*, 112 id. 154 ; *People* v. *Starkweather* 10 J. & S. 326 ; *Foster* v. *Essex Bank*, 19 Mass. 245 ; *Campbell* v. *Holt*, 115 U. S. 620 ; *Tifft* v. *City of Buffalo*, 82 N. Y. 210.) The claim that section 4, chapter 643 of the Laws of 1873, is in violation of section 16 of article 3 of the Constitution is erroneous. (Laws of 1874, chap. 398 ; *S. M. F. Ins. Co.* v. *Mayor, etc.*, 8 N. Y. 241 ; *People ex rel.* v. *Lawrence*, 41 id. 137 ; *People ex rel.* v. *Briggs*, 50 id. 553 ; *People ex rel.* v. *Dudley*, 58 id. 332 ; *Harris* v. *People*, 59 id. 599 ; *Vil. of Gloversville* v. *Howell*, 70 id. 287 ; *In re Public Parks*, 86 id. 437 ; *In re United States*, 96 id. 239 ; *In re Kraus*, 101 id. 194.) The act is neither local nor private. (*People* v. *Bd. of Suprs.*, 17 N. Y. 235 ; *Jones* v. *Chamberlain*, 109 id. 109 ; Laws of 1873, chap. 760 ; *In re N. Y. E. R. R. Co.*, 70 N. Y. 327 ; *In re Church*,

92 id. 1 ; *In re McPherson,* 104 id. 306 ; *In re Middletown,* 82 id. 203.) The claim that it is unjust and inequitable to compel the county of Kings to pay a tax based upon the assessed valuation for the fiscal year commencing October 1, 1872, which, at the time fixed for its payment by the latter act, had been reduced several millions of dollars is untenable. (*Knapp* v. *Town of Newton,* 1 Hun, 268 ; *People* v. *H. Ins. Co.,* 92 N. Y. 347 ; *Amy* v. *Watertown,* 130 U. S. 319.) The constitutionality of the statute is to be presumed until proved otherwise. (*Board of Excise* v. *Barrie,* 34 N. Y. 668.)

*William G. Cooke* for respondents. The award is not appealable. (*People ex rel.* v. *Fowler,* 55 N. Y. 675 ; *Roe* v. *Boyle,* 81 id. 307 ; *Batterman* v. *Finn,* 40 id. 340 ; *People* v. *Dennison,* 84 id. 281 ; Laws of 1876, chap. 444 ; Laws of 1881, chap. 211 ; Laws of 1883, chap. 205 ; Laws of 1884, chaps. 60, 89, 318, 325, 418 ; Laws of 1878, chap. 134 ; Laws of 1879, chap. 307 ; Laws of 1888, chap. 435.) The claim was barred by the Statute of Limitations. (Laws of 1873, chaps. 643, 760 ; *People* v. *Bd. of Suprs.,* 28 N. Y. 114 ; High on Ex. Rem. §§ 2, 139, 324, 355, 398 ; *People* v. *Bd. of Suprs.,* 10 Wend. 363 ; *People* v. *Bd. of Suprs.,* 52 N. Y. 556 ; *People* v. *Common Council,* 78 id. 56 ; 1 R. S. [6th ed.] 959, §§ 55, 56, 57 ; Code Civ. Pro. §§ 91, 98, 382, 389 ; *Cholmondely* v. *Clinton,* 2 Jac. & W. 155 ; *Humbert* v. *Trinity Church,* 24 Wend. 612–615 ; *Borst* v. *Corey,* 15 N. Y. 509 ; *People* v. *Clark,* 9 id. 349 : *People* v. *Bd. of Suprs.,* 12 Barb. 446 ; *Rexford* v. *Knight,* 11 N. Y. 308 ; *Acker* v. *Acker,* 81 id. 143 ; *People* v. *French,* 31 Hun, 617 ; *People* v. *Chapin,* 104 N. Y. 102.) Chapter 318 of the Laws of 1884 did not remove the bar, so as to resurrect the claim or deprive the county of its defense. (Cooley on Const. Lim. 367 ; Wood on Lim. 26, 30, 31, § 11 ; *In re Lotz,* 33 Hun, 620 ; *Shriver* v. *Shriver,* 86 N. Y. 580 ; *Cole* v. *State,* 102 id. 52 ; *McDougall* v. *State,* 109 id. 73 ; Const. N. Y. art. 7, § 14.) The 4th section of chapter 643 of the Laws of 1873, is unconstitutional, as it attempts the confiscation of $48,182.96. (Sedgwick on Stat.

& Const. Law, 414; Cooley on Const. Lim. 495; 2 Kent's Comm. 331; *Gordon* v. *Cornes*, 47 N. Y. 608; *Stuart* v. *Palmer*, 74 id. 183; *Genet* v. *City of Brooklyn*, 99 id. 307.) The act is violative of section 16 of article 3 of the Constitution. (*Huber* v. *People*, 49 N. Y. 135; *People* v. *Bd. of Suprs.*, 43 id. 10; *Neuendorf* v. *Duryea*, 69 id. 560; *Harris* v. *People*, 59 id. 602; *In re Paul*, 94 id. 506.) The act is violative of section 13 of article 7 of the Constitution of 1846. (*People* v. *Bd. of Suprs.*, 17 N. Y. 235; *People* v. *H. Ins. Co.*, 92 id. 328, 335; *In re McPherson*, 104 id. 318.) The $47,000 claim is based upon unconstitutional legislation. (*People* v. *Mayor, etc.*, 4 N. Y. 419; Laws of 1872, chap. 734; *People* v. *Bd. of Suprs.*, 52 N. Y. 556.)

RUGER, Ch. J. By chapter 734 of the Laws of 1872, the state attempted to impose a tax of three and one-half mills per dollar on the assessed valuation of real and personal property in the state. This act was subsequently declared void by the courts on account of remedial defects of form. In the meanwhile, however, most of the counties of the state had levied and collected the tax and paid the amount thereof into the state treasury. Some of the counties, however, among which was the county of Kings, neither levied nor paid over to the state the amount of the tax, and thus a serious inequality in the burden of taxation among the various counties of the state was produced. After the final decision in the courts declaring the act of 1872 void, the legislature, in the year 1873, by chapter 643 of that year, entitled "An act to provide for the support of government and for other purposes," undertook to relevy the tax of 1872 upon the whole state, in a form not open to constitutional objections; but providing, substantially, therein that the payment by the several counties, apparently liable therefor, to the state of the tax of 1872, should be accepted as a satisfaction of the sums required to be paid by the levy of 1873. It was also provided thereby that "there shall be levied and imposed by the board of supervisors of the county of Kings upon the real and personal property of said county

liable to taxation for the fiscal year beginning on the 1st day
of October, 1873, in addition to any and all other taxes levied
and collected therein by law, the sum of $682,984.22, and
when the same shall be paid into the treasury of the state it
shall be in satisfaction of the tax to be levied and imposed,
and of the money to be raised and collected in said county in
pursuance of this act." This sum was the precise amount
required to be paid by the county of Kings under the act of
1872 to bring it upon terms of equality with the other counties
of the state in regard to the taxes of that year. Perfect
equality could not, however, be effected among the various
civil divisions of the state in respect to such tax, unless the
defaulting counties should also be required to pay interest
upon the sums in which they were in default. It was, there-
fore, provided by chapter 760 of the Laws of 1873 that the
several counties of the state which did not in the fiscal year
commencing on October 1, 1872, pay into the treasury the
amount which would have been required from said county
under the act of 1872, if valid, should pay an amount equal to
the interest thereon from the time when the same was payable,
to the time when the same should be eventually paid, and that
such amount should be raised and paid over by the board of
supervisors of said county in the same manner as other debts
and moneys for which said counties were liable to the state.
The county of Kings never paid to the state the sum of
$682,984.22 required by the law of 1873; but did, in 1873,
raise and pay over the sum of $634,801.26, leaving unpaid of
the tax assessed by the laws of 1872, and relevied in 1873, the
sum of $48,128.95, besides interest, which has been estimated
to amount to the sum of $47,808.90 for the first year of its
default. The entire amount, therefore, claimed by the state
in this proceeding was the sum of $95,991.85, with the interest
thereon. In 1873, the county of Kings effected a reduction
of the assessed valuation of its real and personal property to
the amount of nearly $14,000,000, and instead of providing
for the payment in that year of the gross sum of $682,984.22,
as required by section 4 of chapter 643 of the Laws of 1873,

it assessed the tax of three and one-half mills upon the reduced valuation of 1873, thus falling $48,182.95 short of raising the amount it was required to pay by the law.   This conduct was a manifest evasion of the requirements of the law of 1873, and, if such law was legally enacted, can be justified upon no principles of justice or morality.   When the state found that the tax law of 1872 was void and could not be enforced against unwilling taxpayers, it was its duty, in the interest of justice and honesty, to adopt one of two courses, either first, to refund to that portion of the taxpayers of the state who had voluntarily paid the tax of 1872, the sums respectively collected of them, or, secondly, to enforce against those refusing to pay such tax the payment of a sum equal to the amounts paid by other taxpayers in 1872.   The act of 1873 indicated that the state elected to pursue the latter course, and since that time it has been ineffectually endeavoring to prevail upon the county of Kings to pay such an amount as should put it on terms of equality with other tax-paying portions of the state.

It is quite difficult to see why the public officers, or if they were in default, why the legislature has so long delayed and disregarded the plain duty of compelling the county of Kings to perform its obvious duty.   The requirements of the act of 1873 are plain and unambiguous, and there would seem to be no reason why they should not have been enforced against Kings county, either by the law officers of the state or by the legislature, if additional legislation was required.   It is the imperative duty of the legislature to see to it that the burdens of taxation shall be laid as equally as possible upon all classes, and the toleration of any serious inequality, which can be obviated by legislation, constitutes a reproach to the legislative body.   So long, therefore, as the county of Kings continues to neglect the payment of its equal proportion of the taxes of the state, the duty rests upon the state government to adopt the necessary means and measures to compel that county to perform its neglected duty, irrespective of the length of time which has elapsed since its neglect occurred.

There seems to be no sufficient reason why a reference of

this subject should have been made to the Board of Claims, as it involved the performance of a legislative duty, and the examination and decision of the Court of Claims on a partial consideration of the subject could not have aided the legislature in the performance of that duty, or excuse its non-performance. Its duty to equalize the taxation of the year 1872 would still have remained to be performed, even if the decision of the Board of Claims had been against the state, and its decision in favor of the state would not dispense with the legislation necessary to effect the object in view. The reference seems to have been simply a contrivance by which the county of Kings was enabled to evade for a time the performance of its unquestioned duty.

The facts of this claim are fully spread out in the printed statutes of the state, and upon the books of its comptroller, and any person having a desire to be informed concerning them could have been fully satisfied by making inquiry of the regular financial officer of the state. A resolution by the legislature asking for such information from the comptroller would have elicited at any time all the light in respect to the subject that was material or necessary to enable it to legislate intelligently upon the subject. Its duty in the premises was a plain legislative obligation to inquire whether all portions of the state had paid their proportionate shares of the tax of 1872, and, if they had not, to enact promptly such laws as would, if properly enforced, place the whole state on terms of equality in respect to such tax. This could only be done by imposing a tax upon the delinquent parties sufficient in amount when enforced to produce equality among the taxpayers. Notwithstanding the act of 1872 had been declared unconstitutional there still remained a moral obligation upon the taxpayers of Kings county, by reason of the circumstances, to make their contributions to the state treasury equal to those of other taxpayers, and principles of justice as well as equity required that irregularities produced by the operation of statutes, should be remedied by the legislature. The power of that body to correct these inequalities is undoubted, and so long as it permits

one portion of the state to be taxed for the benefit of another, without effort to adjust the inequality, it is justly subject to the reproach of neglecting its constitutional duty. The moral obligation which the county of Kings is under to contribute its equal share to the payment of taxes affords ample authority to the legislature for the exercise of their power to levy a tax sufficient to put its burdens on terms of equality with other parts of the state. The authority which the legislature possesses on the subject of taxation is well defined in the case of *Genet* v. *City of Brooklyn* (99 N. Y. 301), where it was said that "the power of taxation is vested in the legislature and is practically absolute, except as restrained by constitutional limitations. The power of taxation being legislative, all the incidents are within the control of the legislature. The purposes for which a tax shall be levied, the extent of taxation, the apportionment of the tax, upon what property or class of persons the tax shall operate, whether the tax shall be general or limited to a particular locality, and in the latter case the fixing of a district of assessment    *    *    *    are matters within the direction of the legislature, and in respect to which its determination is final." Subject, therefore, to the Constitution alone, the power of the legislature to levy taxes is unlimited, and no *laches* or Statute of Limitation can bar it from the exercise of that power when justice or equity requires it to be done. (*Stuart* v. *Palmer*, 74 N. Y. 183; *Genet* v. *City of Brooklyn*, 99 id. 307.)

The legislature seems to have been conscious of a neglect of duty, and in 1884 it passed an act apparently intended to initiate some proceedings in reference to the subject. (Chap. 318, Laws of 1884.) The act is short and reads as follows: "Sec. 1. The Board of Claims is hereby authorized and directed to hear, audit and determine the claims of the state for balances due on the books of the comptroller from Clinton, Kings, Putnam, Richmond and Schuyler counties, said balance arising from interest due on state tax, defalcation of county treasurers and other causes, and to make such awards as shall be just and equitable. Sec. 2. This act shall take effect immediately."

It was under this act that the claim in question was made before the Board of Claims. The county of Kings voluntarily appeared before that board and claimed that it was not liable to the state, for the reasons, first, that its claim was barred by the Statute of Limitations, and, secondly, that the acts of 1873 were, for various reasons, unconstitutional. The Board of Claims, without determining the question of the constitutionality of the acts referred to, decided that more than six years had elapsed since the state had become entitled to enforce its liability, and the claim was, therefore, barred.

If it be assumed that the only question submitted to the Board of Claims was whether a remedy under the statutes of 1873 was the only one which was open to the state, and that those statutes were constitutional and six years had elapsed without action on the part of the state to enforce its claim, some support might be found for the award of the Board of Claims. It is undoubtedly true that the Statute of Limitations generally runs against simple contract debts resting upon contract or statute in favor of the state, and they may be barred by the lapse of six years. (§ 389, Code of Civil Procedure.) But it is quite absurd to say that the right of the state to enact laws for the purpose of effecting a just and equal distribution of the burdens of taxation among its citizens, can be bound by any lapse of time. A statute of limitation applies only to the prosecution of legal actions and proceedings, and can have no effect upon the exercise of legislative power.

It is quite difficult to see how the Board of Claims reached the conclusion that the claim of the state was barred. It is elementary that a statute of limitation does not run until after a cause of action has accrued to the creditor, and yet that court concluded that the statute was a bar, although they were in doubt whether the laws of 1873 were constitutional or not. The law of 1872 was confessedly unconstitutional, and the respondents there and here contended that the laws of 1873 were equally void, as being in violation of the Constitution. Without determining this question, the board held the state barred.

It is quite probable, if the board had considered the consti-

tutionality of the laws of 1873, it would have held them to be unconstitutional, as it gave a strong intimation to that effect in its opinion. We cannot understand its expression that there were " other objections made to an award in favor of the state which were difficult to obviate," as referring to any other question than that one which, aside from the Statute of Limitations, was the only question raised in the case. Unless, therefore, the constitutionality of the laws of 1873 was found by the trial court, we do not see that the question of the Statute of Limitations was in the case. Such a statute does not begin to run until after a cause of action has accrued to the creditor, and if no legal obligation to pay the tax in question was ever imposed on the county of Kings, the state could then have had no claim upon which the statute would operate.

But in reviewing the proceedings of the Board of Claims, we have been embarrassed, not only by the vagueness and uncertainty of the questions submitted, but also by doubts as to the validity of the referring act itself. We do not question the fact that the Board of Claims is a constitutional tribunal, and is lawfully authorized to determine *claims against the state* which may have been referred to it, but it does not follow that the legislature can compel citizens to appear before it and litigate claims made by the state, or any other party against them. Such boards have usually originated out of the apparent injustice of depriving the citizens of all remedies against the state, through the inability of the regular judicial tribunals to acquire jurisdiction over the sovereign. Such jurisdiction can be obtained only by the consent of the sovereign (*People* v. *Dennison*, 84 N. Y. 281), and in giving such consent, the government may lawfully prescribe the terms and conditions upon which such prosecutions shall proceed and it may lawfully create a special tribunal for the hearing and determination of such exceptional cases as established courts are precluded by the general laws, or policy of the state, from hearing and deciding. The state may, to a certain extent, abandon its prerogative and consent to appear before a special tribunal. (*McElrath* v. *United States*, 102 U. S. 440.)

This, however, does not necessarily authorize the legislature to create a judicial tribunal of general jurisdiction to hear and determine legal questions which are cognizable in the regular constitutional tribunals of the state.  (§ 19, art. 6 of the Constitution; see *DeHart* v. *Hatch*, 3 Hun, 375.)  We do not, however, propose to discuss or determine this point, as there is still another question which precludes us altogether from considering this appeal, and that is the non-appealability of the award in question.  The act of 1884 does not, in terms, purport to amend the acts of 1883 and 1884, creating the Court of Claims and providing for the practice to be followed therein, and does not, of itself, authorize an appeal to this court from any award made under it.  The acts creating the Board of Claims provide especially for appeals from certain special awards therein authorized to be made to the Court of Appeals by any party who may be aggrieved, but do not, in terms, provide for appeals generally from all decisions made by such tribunal.  The legislature, in making reference of special cases to the Board of Claims, have generally provided in the acts making such references for an appeal to this court.  (Chap. 329, Laws of 1884; chap. 85, Laws of 1884.)

It may be implied from this practice that it did not suppose the right of appeal existed, unless specially provided for.  The jurisdiction attempted to be given to the Board of Claims in this case is novel, special, and altogether foreign to the purposes for which that tribunal was originally organized, and the right of appeal conferred by that act cannot, we think, be construed to cover a jurisdiction so different from that contemplated by the act of its creation.

No appeal lies to this court from any tribunal, unless authorized by some statute, and we do not think there is any statute which, by reasonable construction, gives an appeal in this case.

The appeal is, therefore, dismissed.

All concur, except O'BRIEN, J., taking no part.

Appeal dismissed.