CASE 97.—ACTION BY ANNA M. DURRETT, AGAINST GEORGE H. DAVIDSON, SHERIFF OF KENTON COUNTY AND OTHERS TO ENJOIN THE COLLECTION OF TURNPIKE TAXES.—May 11.

## Durrett v. Davidson, Sheriff, &c.

Appeal from Kenton Circuit Court.

W. McD. Shaw, Circuit Judge.

Judgment for defendants. Plaintiff appeals. Affirmed.

1. Constitutional Law—Validity of Statute—Retrospective Operation—Taxation—Act 1906, providing for a general tax by a county to pay bonds issued for the benefit of turnpike taxing districts within the county, created under Act 1890 (Acts

Durrett v. Davidson, Sheriff, &c.

1889-90, p. 674, c. 1491), authorizing the construction of turn-pikes, one-half to be paid for by taxation of 'the respective turnpike taxing districts, and one-half by general taxation of the county, is not invalid, though retrospective in operation.

2. Same—Vested Rights—Under Act 1890 (Acts 1889-90, p. 674, c. 1491), authorizing the construction of turnpikes in Kenton county, one-half to be paid by taxation of districts adjacent to the respective turnpikes, and one-half by general taxation of the county, one whose property is not located within any of the turnpike districts acquires no vested rights which are violated by Act 1906, providing for payment for the turnpikes by general taxation of the county.

M. M. DURRETT for appellant.

F. M. TRACY for appellee.

(No briefs; record out of office.)

OPINION OF THE COURT BY JUDGE BARKER—Affirming.

This action was instituted by the appellant, Anna M. Durrett, who is the owner of land in Kenton county, Kentucky, for the purpose of enjoining the sheriff from collecting taxes levied upon it under the provisions of an act of the General Assembly, which she insists is unconstitutional. A general demurrer was interposed to the petition, and sustained by the court, and the appellant declining to plead further, her petition was dismissed, from which judgment this appeal is prosecuted.

The sole question involved is the constitutionality of the act in question, it being conceded that, if it is valid, the proceeding under it is legal and regular. As preliminary to a discussion of the legal question involved, we adopt from the brief of appellant the following succinct and lucid statement of the history out of which arose this litigation:

"In 1890 an act was passed (Acts 1889-90, p. 674, c. 1491) authorizing the construction of turnpikes in Kenton county, and providing that, upon the filing of a petition with the county court, signed by a majority of the landowners within one mile of the line and one-half mile of the end of a proposed turnpike, it was then the duty of the county judge to appoint three commissioners for the purpose of constructing a turnpike; and it was further provided, upon the construction of the turnpike, bonds of the county were to be issued by the county commissioners (fiscal court), and the tax to pay the interest and principal on this bonded indebtedness was to be levied, one-half on the territory within the road district (i. e., the territory within one mile of the line and one-half mile of the end of a road), and the other half upon the county at large, outside the cities and towns of Covington, West Covington, Central Covington, and Ludlow. Under this law a great many turnpikes were built, and first and last bonds were issued to the extent of $381,550. Under the terms of the act of 1890, under which these turnpikes were built, one-half of this entire indebtedness was placed upon the turnpike road districts; i. e., the territory within one mile of the line and one-half mile of the end of the road. Nearly all of these roads were built within about two years, at the end of which time a realization of the burden which the taxes necessary for the payment of the bonds would impose, put a stop to further construction. But the damage was already done. The road districts so lapped over one another that some taxpayers were in as many as six different districts, and the tax upon such persons was found to be so great as to amount to confiscation of their property.

To relieve this situation, the fiscal court levied a
uniform tax over the entire general district, claiming
authority therefor under section 171 of the Constitu-
tion. A tax of this description was levied for nearly
15 years, and until the decision of this court in the
case of Carpenter v. Town of Central Covington, 119
Ky., 785; 81 S. W., 919; 26 Ky. Law Rep., 430,
wherein it was held that there was no authority for
a tax levy such as the authorities of Kenton county
had been levying during all of these years. After the
decision referred to, an effort was made to take
advantage of an act passed May 5, 1893, now known
as section 4736 of the Kentucky Statutes of 1903, and
which provides, in substance, that when the land-
owner was found to be in more than one turnpike
district, he would only be liable for the tax in the
district from which he derived the greatest benefit.
But this court, when the matter was presented to
them (Durrett v. Kenton County, 87 S. W., 1070; 27
Ky. Law Rep., 1173), held that this statute was only
intended to apply to turnpikes built subsequent to its
enactment. The decision, therefore, afforded no relief
to the land owners within the road districts, for the
reason that nearly all the turnpikes were built prior
to the enactment of the act of May 5, 1893. The
authorities of Kenton county, believing that a tax
levy in accordance with the provisions of the original
act of 1890 would be disastrous to the farming inter-
ests of Kenton county, and would be difficult, if not
impossible of performance, procured the passage of
the act now under consideration, which provides for
a shifting of the burden of taxation from the sub or
road districts, to the general district, and provides
for a uniform system of taxation throughout the

general district. Appellant's land is not situated in any of the road districts, although it is within the general district as created under the provisions of the act of 1890, consequently, the liability of appellant's land, in the matter of payment for the construction of the turnpike as fixed by the act of 1890, has been, until the present time, only one-half the total liability; i. e., appellant's land, not being in any road district, was only liable for the tax to pay the one-half of the general liability placed upon the turnpike taxing district at large. This recent act will increase the burden of appellant's taxation, and for this reason appellant is resisting the tax levy which the fiscal court has made in accordance with this new act.''

The act, under which the tax complained of was levied, is as follows:

''An Act to provide for the payment of interest and to create a sinking fund for the ultimate redemption of county bonds issued for the benefit of certain turnpike taxing districts.

''Be it enacted by the General Assembly of the Commonwealth of Kentucky:

''Whenever in any county, under laws heretofore enacted, creating a general county turnpike taxing district, within and composed of a part of such county and road district within such general county turnpike taxing district, and providing for the issue of the bonds of the county for the benefit of such general county turnpike taxing district, for the purpose of building turnpikes in such general county turnpike taxing districts, and the road districts therein, and paying the cost thereof, which bonds were to be redeemed under the provision of such laws by taxes

levied partly on the entire property of such general turnpike taxing district, and by taxes levied partly in a road district, or road district within such general county turnpike taxing district, it shall be lawful and the fiscal court of any such county is empowered to levy a uniform tax on all the taxable property in such general county turnpike taxing district, as the same was bounded at the time such law or laws went into effect to pay the interest on any indebtedness created under such law or laws which may still be unpaid, and to create a sinking fund for the ultimate payment thereof; provided, however, that no part of any territory which may have formed a part of such general county turnpike taxing district, and which since the creation of any part of such indebtedness may have been annexed to any cities or towns within such county, but not within such general county turnpike district, not subject to the provisions of such law or laws shall be required to pay any part of such indebtedness created subsequent to such annexation.''

''All laws and parts of laws in conflict herewith, are hereby repealed.

''Whereas it appears that immediate provision must be made for the payment of bonds, and the interest thereon, which have been issued under laws herein referred to, an emergency is hereby declared to exist, and this act shall take effect from and after its approval by the Governor.

''Approved by the Governor, March 14, 1906.''

It is insisted by the appellant, that, inasmuch as her land, under the original act of 1890, was only subject to a tax to pay one-half of the turnpike bonded indebtedness, the act of 1906, which retrospectively taxes it to pay the whole, divests her of a vested right, and is,

for that reason, unconstitutional. The act of 1890, under which the turnpikes were built and the county's debt created, was not repealed by our present Constitution, which went into effect in 1891; being in nowise repugnant to any constitutional provision, under the terms of the schedule, it remained in force until repealed by subsequent legislation. This was expressly decided in City of Covington v. District of Highlands of Campbell County, 113 Ky., 612; 24 Ky. Law Rep., 433; 68 S. W., 669, and in the cases of Carpenter v. Town of Central Covington, 119 Ky., 785; 81 S. W., 919; 26 Ky. Law Rep., 430, and Durrett v. Kenton County, 87 S. W., 1070; 27 Ky. Law Rep., 1173. The act of 1906 amends the act of 1890, by substituting for the original plan by which the indebtedness created in building the turnpikes was to be paid, an entirely new system. The first question to be disposed of, therefore, is whether or not a retrospective act of legislation is unconstitutional. There is certainly no provision in our fundamental law which, in express terms, forbids retrospective legislation. It does, however, forbid ex post facto laws; but these are statutes retroactively making that a crime which was not so at the time the acts constituting the offense were committed.

In Cooley on Taxation (3d Ed.), Vol. 1, p. 492, it is said: "Unless the Constitution prohibits retrospective legislation, the basis of an assessment of taxes may as lawfully be retroactive as the reverse; that is to say, it may as well have regard to benefits theretofore received, as to those which may be assessed thereafter. It has, therefore, been very properly held that there is no constitutional, or other legal objection to the levy of taxes to pay for municipal improvements

which had previously been made, or to the assessment or re-assessment of taxes upon property which had escaped taxation, or had been grossly undervalued for taxation in previous years." And in Thornton v. McGrath, 1 Duv., 355, the rule is thus stated: "Retrospective legislation is not, merely as such, unconstitutional, and, though it may often be impolitic and unjust, the judiciary is bound by it unless it shall have an effect forbidden by the fundamental law. Ex post facto statutes applying only to crimes and statutes impairing the obligation of contracts, are expressly forbidden by the Constitution."

In Cooley on Constitutional Limitations (7th Ed.), p. 529, it is said: "There are numerous cases which hold that retrospective laws are not obnoxious to constitutional objection, while in others they have been held to be void. The different decisions have been based upon diversities in the facts which make different principles applicable. There is no doubt of the right of the Legislature to pass statutes which reach back to and change or modify the effect of prior transactions, provided retrospective laws are not forbidden, eo nomine, by State Constitution, and provided further, that no other objection exists to them than their retrospective character. Nevertheless, legislation of this character is exceedingly liable to abuse. And it is a sound rule of construction, that a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should act retrospectively. And some of the States have deemed it just and wise to forbid such laws altogether by their Constitutions. A retrospective statute curing defects in legal proceedings where they are, in their nature, irregularities

only, and do not extend to matters of jurisdiction, is not void on constitutional grounds, unless expressly forbidden. Of this class are the statutes to cure irregularities in the assessment of property for taxations and the levy of taxes thereon; irregularities in the organization or elections of corporations; irregularities in the votes or other action by municipal corporations, or the like, where a statutory power has failed of due and regular execution through the carelessness of officers, or other cause; irregular proceedings in court, etc. The rule applicable to cases of this description is substantially the following: If the thing wanting or which failed to be done, and which constitutes the defect in the proceedings, is something, the necesisty for which the Legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law.''

The appellant had no vested right in immunity from taxation. It is not, of course, pretended that she had any special contract of immunity, and in the absence of such, no vested right could accrue to her out of the fact that the legislature, in the original apportionment of the burden for paying the turnpike bonds, placed upon her land less than might have been done. It is not disputed, and indeed, cannot be, that the legislature had the power, originally, to provide for the building of the turnpikes in question by a general tax over the whole county, which, of course, would

have included appellant's land; that it did not do so, but placed upon her land only one-half the burden, may be considered an act of grace—not of right; and she has no complaint now, that the grace of the sovereign has been withdrawn, and the burden reapportioned, as might originally have been done. This view of the case is not altered in any wise by the consideration that the question of building the turnpikes was submitted, under the act of 1890, to a vote of the people. It might have been done without the submisison of this question, and the fact that the legislature authorized the vote as a condition precedent to the building of the roads constitutes no reason now against a change in the manner of raising the taxes out of which the cost is to be paid. The legislative power and control of the subject-matter was not exhausted by the act of 1890, and it is a fundamental rule, that whatever the legislature might have done originally, it can afterwards do in the furtherance of equity and justice, and for the purpose of preventing the legislative will from being frustrated.

The case of Fitzpatrick v. Board of Trustees of Mt. Sterling Public Graded School, 87 Ky., 132; 10 Ky. Law Rep., 9; 7 S. W., 896, was, in principle, identical with the question at bar. By an act of the Legislature passed in 1884, a graded school district was established consisting of the territory within the boundary of the city of Mt. Sterling and certain prescribed territory outside the city limits. It was provided that the affairs of the district should be controlled by five trustees selected by the qualified voters therein, and these trustees were empowered to assess and levy a tax for the support of the school, and to issue and sell bonds to the extent of $12,000

for the purpose of purchasing ground and erecting thereon buildings for school purposes. The school district being thus established, the bonds were issued, the buildings erected, and taxes levied for school purposes within the limit and making a new taxing district of smaller dimensions, which, necessarily, increased the burden on the taxpayers within the new district. In that case, as in this, a vote had been taken as a condition precedent to the issue of the bonds. The question of the constitutionality of the act of 1886 was disposed of by this court in the following language: "* * * The question becomes narrowed to the simple inquiry whether the legislature had the power, by the act of 1886, to cut off a portion of the district as it existed when the election was held, leaving the burden of taxation upon those residing in the district thus created in area, and the authority of the board of trustees to act therein unimpaired. Legislative power to divide existing counties and districts, organized for common school or other purposes within counties, and to create new ones at will, has been exercised in this State from the beginning, without question. And, as a necessary consequence, legislative power must at the same time exist to make provision in regard to property rights acquired, and debts and liabilities incurred by the county or the district as it existed previous to the division of territory. As said in the case of Laramie County v. Albany County, 92 U. S., 307; 23 L. Ed., 552, where the question was elaborately considered and the authorities reviewed: 'It is everywhere acknowledged that the legislature possesses the power to divide counties and towns at their pleasure, and to apportion the common property and the com-

mon burdens in such manner as to them may seem reasonable and equitable.' And where no provision is made for an apportionment of the property and debts, 'the rule is that the old corporation owns all the public property within her own limits, and is responsible for all debts contracted by her before the act of separation was passed.' Although the question whether a tax shall be imposed upon a particular county or district for common school purposes may, with propriety, be, and generally is, submitted to the voters to be directly affected thereby, it is not indispensable to the validity of such taxation that it should be done. For the legislature has the power to impose such taxes without a submission, and may, unquestionably, at any time thereafter, suspend, modify, or repeal the statute authorizing it, whether it has or has not been voted on, provided vested rights be not thereby affected nor contracts impaired. As the question before us is, therefore, purely legislative, and involves no constitutional right of the taxpayers in the district as it exists under the act of 1886, the court has no power to suspend or interfere with the collection of taxes authorized by that act. It is true, the entire burden, in virtue of the act, falls upon them, but they are compensated by having the exclusive enjoyment of the schools established and supported by the taxes they pay; whether fully and adequately compensated or not, it is the province of the legislature, not the judiciary, to determine. It seems those who reside in the original district, outside of Mt. Sterling, are required by the act of 1886 to pay taxes assessed for the year 1885, and pupils in that territory were given the right to attend the district school for one scholastic year. As, according to the

Durrett v. Davidson, Sheriff, &c.

views we have already expressed, there can be no question of the power of the legislature to impose that burden in consideration of the benefit conferred, there is nothing more involved, so far as that class of taxpayers is concerned, than a calculation of gain and loss, with which the court has nothing to do.''

The case of Marion County v. Louisville & Nashville Railroad Co., 91 Ky., 388; 12 Ky. Law Rep., 961; 15 S. W., 1061, is also similar to the case under discussion, and there, as here, arose the question of whether a curative statute readjusting the burden of taxation impaired vested rights of the taxpayer. in holding the retrospective statute constitutional, it was said: ''There has been no impairment of any contract or vested right in this case. The rule relating to such cases has no application here. There is no contract between the taxpayer and the governmental power, which protects him and his property, and to which he must, therefore, pay the tax as a duty he owes to it, and instead of this cruative statute impairing a vested right, it merely takes away the opportunity to avoid the discharge of a duty. The existence of general indebtedness by the county when these levies were made is virtually admitted, and if it were not, it is shown. Equitably it was the duty of the appellees to discharge their fair proportion of it, and the act, which is now assailed as unconstitutional, merely prevents them from acting unjustly by refusing to bear their equal portion of a common burden. from the imposition of which they, equally with others, receive a benefit. The constitutional provision forbidding the impairment of a vested right by legislation was never intended to apply to such a case. One should have no vested right to do wrong

or act unjustly, and courts decline to regard that as a
vested right which is contrary to justice and the
equity of the case. These levies were of uniform
operation. They imposed a public tax, common to
all the taxpayers of the county, for a local purpose,
which may be done."

In the caes. of Laramie County v. Albany County,
92 U. S., 307; 23 L. Ed., 552, the question of the power
of the legislature to enact retrospective statutes
shifting and reorganizing the burden of taxation for
public purposes it thoroughly discussed, and the right
so to do upheld and mtained, and from the opinion in
that case we bororw the following: "Public duties
are required of counties, as well as of towns, as a part
of the machinery of the State; and, in order that they
may be able to perform those duties, they are vested
with certain corporate powers; but their functions
are wholly of a public nature, and they are at all times
as much subject to the will of the legislature as
incorporated towns, as appears by the best text-
writers upon the subject and the great weight of
judicial authority. Institutions of the kind, whether
called counties or towns, are the auxiliaries of the
State in the important business of municipal rule,
and cannot have the least pretension to sustain their
privilege or their existence upon anything like a
contract between them and the legislature of the
State, because there is not and cannot be any reciproc-
ity of stiplation, and their objects and duties are
utterly incompatible with everything of the nature
of compact. Instead of that, the constant practice is
to divide large counties and towns, and to consolidate
small ones, to meet the wishes of the residents, or to
promote the public interests, as understood by those

Durrett v. Davidson, Sheriff, &c.

who control the action of the legislature. Opposition is sometimes manifested, but it is everywhere acknowledged that the legislature possesses the power to divide counties and towns at their pleasure, and to apportion the common property and the common burden in such manner as to them may seem reasonable and equitable."

We conclude, then, both upon reason and authority, that the power of fixing the burden of taxation to meet the indebtedness, arising from the construction of the turnpikes in Kenton county, being originally possessed by the legislature, when it was afterwards ascertained that the first plan was unjust and inequitable, it was within the province of the lawmaking power to readjust this burden upon a new and more equitable plan, and therefore the act of 1906, which seeks to do this, is valid.

Judgment affirmed.