THE PEOPLE OF THE STATE OF NEW YORK ex rel. ERNEST HILL and Others, Individually and in Behalf Respectively of School Districts Nos. 3, 5, 8 and 11 of the Town of Carmel, Putnam County, New York, Relators, *v.* ALLAN J. WILLIAMS, as District Superintendent of Schools of Putnam County, and STANLEY D. CORNISH, as Town Clerk of the Town of Carmel, Putnam County, New York, Respondents, or any Other Person Having Custody of the Records Described.

Second Department, January 23, 1920.

**Schools — apportionment of cost of erecting high school for school unit after enactment of statute abolishing such unit — repealing act construed.**

Where a board of education of a duly established town school unit, pursuant to the authority of the statute then existent, resolved to erect a high school for the districts composing the unit, the building to be located in a certain district and to cost a certain sum of money to be secured by the issue of bonds chargeable upon the property within the unit, and after the debt had been contracted and the building, which was more elaborate than was necessary for a separate district, was in the course of construction, the Legislature repealed article 11a of the Education Law by chapter 199 of the Laws of 1918, so that the statute upon the faith of which the various school districts had acted was no longer in effect, it was proper for the district superintendent to apportion the debt upon the school districts formerly composing the unit coupled with the permission to residents of districts assessed, but not residing in the district in which the new school is to be located, to send children to the high school without payment of tuition during the period of the payment of the bonds. Such apportionment of the debt is authorized by the law which effected the repeal.

RICH, J., dissents, with memorandum.

CERTIORARI issued out of the Supreme Court and attested on the 7th day of December, 1918, directed to Allan J. Williams, as district superintendent of schools, and another, commanding them to certify and return to the office of the clerk of the county of Putnam all and singular their proceedings had in apportioning the payment of bonds for the construction of a high school building among certain school districts.

*Clifford Couch* [*Peter A. Anderson* with him on the brief], for the relators.

*Clayton Ryder,* for the respondents.

PER CURIAM:

We think the action of the respondent district superintendent of schools in apportioning the debt is authorized by Laws of 1918, chapter 199, which repealed article 11-a of the Education Law (as added by Laws of 1917, chap. 328). When this repealing statute took effect certain things had been accomplished under the Education Law as it was upon the statute books on November 20, 1917, when the electors of unit No. 2 authorized the issue of $35,000 bonds for the purpose of erecting a high school building within town school unit No. 2 of the town of Carmel, Putnam county. A town school unit had been established in June, 1917, a board of education had been chosen, and under resolution of the board a special meeting of the electors of the unit had been held in November, 1917, at which it was resolved to erect a high school for the districts comprised in the unit, at Lake Mahopac, in district No. 4, and to expend in the construction thereof $35,000, to be secured by the issue of bonds of town school unit No. 2 for that amount, chargeable as to principal and interest upon the property within the unit. The debt had been contracted, the bonds had been issued and sold, plans for the new building had been prepared, the contracts let and the building was in course of construction. The building is located at Lake Mahopac in school district No. 4, but it is evident that the old school district had no need for such an elaborate building, and would never have incurred a debt of $35,000 for its own particular needs. In this condition of things, the Legislature by Laws of 1918, chapter 199, taking effect April 13 and August 1, 1918, repealed article 11-a of the Education Law, upon the faith of which the various school districts had acted. But in repealing article 11-a the Legislature expressly declared (§ 7) that obligations lawfully created under the act repealed before August 1, 1918, should not be impaired. It was provided that bonds and other evidences of debt issued by the town board of education to pay for the erection of a new building or to remodel, enlarge or improve an existing building, or for any purpose in connection with the schools within the territory of a particular school district, should be a charge upon the school district in which the building or site is located, or otherwise specially benefited or to be benefited by the proceeds of the debt. The section referred to

provides for three separate situations which might be presented by the repeal of the law. *First.* Bonds issued for the benefit of any particular school district. These bonds were to be chargeable upon the particular district. *Second.* Debts not represented by bonds, due or to become due on contracts for work on schools in a particular district. These were charged to the particular district. *Third* (and this is the situation presented in the case at bar). Bonds which had been issued or contracts which had been made with respect to the schools in the town generally. This describes the $35,000 bonds referred to in the petition, which had been issued by the town Unit for the benefit of the schools in all of the districts forming part of that unit. As to these bonds it is provided: " the obligation thus created shall be apportioned among the school districts in proportion to benefits received or provided for. Such apportionment shall be made by the district superintendent after examining the facts at a public hearing." The respondent district superintendent has apportioned the $35,000 indebtedness represented by the bonds among each of the five school districts which comprised the unit. The new school building is located in district No. 4, and it is provided in section 8 of the repealing act that school buildings and sites within a school district shall belong to such district, and the relators, residents and electors in the remaining school districts formerly part of unit No. 2, challenge the right of the superintendent to place any part of the debt upon districts other than that in which the building is located. They argue that under the repeal these other districts derive no benefit from the school, and that the children in the other districts have no right to attend it. In making his apportionment of the debt the superintendent made it a condition that such pupils residing in districts 3, 5, 8 and 11, as may desire to enter any department of the Mahopac school, shall be allowed to do so without payment of tuition during the period of payment of the bonds. Although the privilege thus granted is not objected to by the school authorities in district No. 4, the relators say it is void, and that the superintendent had no power to impose the condition.

Certainly, the repeal of article 11-a, whatever may have been the reasons inducing it, caused many complications. The

bonds had been issued legally and in the hands of the purchasers thereof were an obligation of each of the districts composing the unit and chargeable against the property in each of the districts. The Legislature in repealing the former law could not and did not attempt to invalidate the security in the hands of the holders of the bonds. Each district represented by the relators is responsible, as well as the Mahopac district in which the building is located, without reference to where the title to the school building is placed by the repealing act. In fact, it may well be asked how are the relators aggrieved by the action of the superintendent in apportioning the debt? While it does not affect the right of the holders of the bonds to collect from the property comprising the unit which issued the security, it gives each of the districts a fixed right to contribution from the other localities. The apportionment does not appear to be unjust as between the districts; if the superintendent had power to make it, he gives his reasons which would appear to justify his action. The Legislature attempts to adjust the situation created by the repeal by authorizing the apportionment of the debt among the constituent districts " in proportion to benefits received or provided for." When the town unit was broken up by the repeal statute, the districts other than No. 4 may have been deprived of their right to use the school in that district, although the superintendent has attempted to save to them that right, and it is not challenged in this proceeding by the school authorities in district No. 4. But the question is, what was the situation at the date of the repeal? At that time benefits had been provided for them. The school building had been planned and was constructed so as to accommodate all of them. It was in view of the benefits to be derived by all of the districts that a building of these dimensions and character was authorized and erected. The building was provided for all of the districts. If the Legislature in its wisdom · saw fit, in 1918, to change the entire plan, this did not alter the situation as between the school districts. The school was their joint and several undertaking. If the children of the districts outside district No. 4 are barred from the school, a proposition which we are not called upon to decide, it would certainly appear to be an unnecessary hardship. But it would be unjust to place the entire debt upon a district which never intended to contract

such an obligation on its separate responsibility, and this would appear to be contrary to the intention of the Legislature as expressed in section 7 of the repealing act.

The determination of the respondent district superintendent of schools should be confirmed and the writ dismissed, with fifty dollars costs and disbursements.

JENKS, P. J., MILLS, BLACKMAR and KELLY, JJ., concur; RICH, J., reads for reversal.

RICH, J. (dissenting):

While the order made by the superintendent was undoubtedly equitable, it was unauthorized. The building is located in district No. 4. It is the district specially benefited, and though in my opinion the bonds are unimpaired, the bonded indebtedness is expressly chargeable to it. Furthermore, the Legislature in 1918 (Laws of 1918, chap. 199) repealed section 341 of the Education Law (as added by Laws of 1917, chap. 328), which gave to children in other districts the right to attend the new school, and the superintendent acted without authority in directing that pupils of other school districts be permitted to enter the high school as a condition of the payment of the bonded indebtedness; and I must vote for reversal.

Determination confirmed and writ dismissed, with fifty dollars costs and disbursements.