IN the Matter of the Application of G. HERBERT PARDEE, Individually and as a Taxpayer in School District No. One (1) of the Town of Irondequoit, Monroe County, New York, and on Behalf of All Other Taxpayers in Said District, Similarly Situated, for a Writ of Prohibition, Appellant, *v.* WALLACE W. RAYFIELD, as District Superintendent of Schools of District No. One (1) of Monroe County, New York, and Others, Respondents, Impleaded with FRED LAUTERBACH and Others, as Trustees of School District No. One, Appellants.

Fourth Department, May 5, 1920.

Schools — constitutional law — validity of section 11-a of chapter 199 of the Laws of 1918, as added by chapter 561 of the Laws of 1919 — writ of prohibition — adjustment between several school districts of township unit of cost of construction of schoolhouse in one district.

Section 11-a of chapter 199 of the Laws of 1918, as added by chapter 561 of the Laws of 1919, enacted for the purpose of making " a fair and equal adjustment as between the several school districts of such town or town school unit in accordance with the burdens imposed upon and benefits received by each of such districts " of the amount raised by the board of education of the town under the Town Unit School Law by an assess-

ment against the entire school unit to pay for the erection of a schoolhouse in one district, is constitutional, and, hence, a taxpayer in said district is not entitled to a writ of prohibition to prevent the district superintendent from holding a hearing in accordance with the statute.

The relator by paying taxes which were legally levied by the town board of education, and used in part for the erection of said schoolhouse, did not acquire a vested right so that he could not be again taxed as a member of the district to pay back to the other districts such portion of the moneys raised in said districts and used for the erection of said schoolhouse as might be determined by the district superintendent in making an equitable adjustment under the statute.

The power to impose taxes which is vested in the Legislature is exclusive and absolute except as restricted by the Federal or State Constitution and it is for the Legislature to determine and its determination is final, within said restriction, upon all matters involving the purpose of a tax, its extent, apportionment, upon what property or class of persons it shall operate, whether it shall be general or limited and the time and manner of its collection.

The fact that the said statute is retroactive does not make it unconstitutional.

While the Legislature undoubtedly had the power when it enacted the Town Unit School Law (Laws of 1917, chap. 328) to provide that the expense of building a new schoolhouse in a district should be borne entirely by that district, it distributed over the entire unit the cost of the schoolhouse erected in relator's district which resulted in a lower tax for the relator, but that fact did not give the relator a vested right to have the said tax remain unaltered, and the Legislature had the same discretion to reapportion such burden as it had in the first instance to determine the tax district which should bear the expense of the new building; what it could have done in the first instance it could do by subsequent enactment.

APPEAL by the relator, G. Herbert Pardee, individually and as taxpayer, and another, from an order of the Supreme Court, made at the Monroe Special Term and entered in the office of the clerk of the county of Monroe on the 26th day of December, 1919, denying relator's application for a writ of prohibition.

*Van Alstyne & Smyth,* for the relator, G. Herbert Pardee.

*Horace G. Pierce,* for the trustees of school district No. 1, appellant.

*John Van Voorhis' Sons* [*Eugene Van Voorhis* of counsel], for the trustees of school district No. 4, respondent.

HUBBS, J.:

Chapter 328 of the Laws of 1917 (adding to Education Law, art. 11-a) changed the school system in this State from

the district system into the town unit system. It placed all of the district schools, except union free schools as therein specified, under the management and control of a township board of education, and the offices of the old school districts were abolished. Before the new town unit system had been in force for a year, chapter 328 of the Laws of 1917, under which it was created, was repealed by chapter 199 of the Laws of 1918 and the district system of schools was restored. Section 7 of chapter 199 of the Laws of 1918 provided that the obligation of bonds or other evidences of indebtedness issued or contracts made by the town boards of education should not be impaired, but that, when issued or made for the benefit of the schools of a town generally, the obligation should be apportioned among the school districts of the town in proportion to the benefits received or provided for. It also provided that when bonds and other evidences of debt had been issued or contracts made for the erection of a new school building within a particular district, such bonds or other evidences of debt or contracts should be a charge upon the particular district wherein the new building was erected.

It will be noted that this statute only provided for cases where there was an outstanding indebtedness, evidenced by bonds or other evidences of indebtedness or contracts. Chapter 183 of the Laws of 1919 added section 7-a to chapter 199 of the Laws of 1918 so as to provide for the reimbursement of expenditures made by a town board of education on account of the bonded indebtedness of a school district in a town or town school unit, and for the application of the amount paid in liquidation of any deficit which may exist after the settlement of the financial affairs of such town or town school unit, or for the proper distribution thereof to the several school districts if there shall be no such deficit. Chapter 561 of the Laws of 1919, adding section 11-a to chapter 199 of the Laws of 1918, provided, however, that " In a town or town school unit in which the financial affairs have not been settled * * * and where it appears that the board of education of such town or town school unit constructed * * * a school building in a district in such town or town school unit and paid for the same out of its annual tax budget without issuing bonds therefor * * * there shall

be an adjustment of the moneys received and expended on account of the several school districts in said town or town school unit in the following manner: * * *." The statute then provided a method by which the Legislature sought to bring about "a fair and equal adjustment as between the several school districts of such town or town school unit in accordance with the burdens imposed upon and benefits received by each of such districts." This last statute sought to provide for an equitable adjustment between districts in cases where a new school building had been erected and fully paid for.

The scheme of the statutes referred to, construed together, was, in brief, as follows:

(1) To abolish the old school district system and substitute in its place the town school unit system.

(2) To abolish the new town school unit system, so provided for, and to restore the old district system.

(3) To provide for an equitable distribution of bonded indebtedness contracted while the town unit system was in operation.

(4) To provide for an equitable adjustment between the school districts, according to the burdens imposed and benefits received, where new school buildings had been erected and fully paid for out of the annual tax budget of the town school unit.

When the town unit system went into effect under chapter 328 of the Laws of 1917, there were, in the town of Irondequoit, five school districts. The new town unit system had jurisdiction over all of these districts except No. 3, which was a union free school district. The new board of education, under the town unit system, took office on August 1, 1917. Prior thereto, and on June 19, 1917, the schoolhouse in district No. 1 was destroyed by fire. On July 6, 1917, at a meeting of the taxpayers of the district, a resolution was duly passed authorizing the trustees of said district to build a new schoolhouse at an expense of not to exceed $7,000, the amount of money on hand.

After the board of education for the town came into office on August 1, 1917, contracts were let and the building was erected at a cost of about $11,000. The $7,000 on hand in district No. 1 was applied in part payment of the $11,000, and the balance was included in the annual budget by the board of education

of the town and was duly collected from the taxpayers of said town school unit, made up of said four old school districts. The $4,000 so collected was used to pay the balance due for said new school building in old district No. 1.

Thereafter proceedings· were started, under section 11-a of chapter 199 of the Laws of 1918, as added by chapter 561 of the Laws of 1919, to have the district superintendent of schools " make an apportionment among the several school districts of the town school unit so that there shall be a fair and equal adjustment as between the several school districts of such school unit in accordance with the burdens imposed upon and benefits received by each of such districts." The district superintendent started to hold a hearing, in accordance with said statute, when the relator sued out a writ of prohibition. Upon the return of the writ, the Special Term dismissed the same, and the relator and the trustees of school district No. 1 have appealed to this court.

It is earnestly urged by the counsel for the relator that the said district superintendent is without jurisdiction to act in the premises because said section 11-a of chapter 199 of the Laws of 1918, as added by chapter 561 of the Laws of 1919, is unconstitutional and void. While the arguments of the relator are stated in· various forms they are all based, in substance, upon the proposition that relator is immune from further taxation on account of the expense of building the schoolhouse because he has paid the tax legally levied by the town board of education; that the action of said board was final, judicial and established in him a contract right not to be taxed further for the same purpose; that such right is a vested right, not subject to be disturbed by an act of the Legislature, and that the act in question is retroactive and void under·the Federal and State Constitutions.

There is no claim that the relator had an express contract of immunity from further liability to pay a tax on account of the new school building. If the relator and the other tax-payers of school district No. 1 are exempt from further taxation on account of the expense of constructing said school building, it must be because of some constitutional provision giving such exemption. There is no such constitutional right as is contended for by the relator. A citizen or taxpayer has no vested

right in statutory privileges, exemptions or immunity from taxation. (12 C. J. 968; *Brearley School* v. *Ward*, 201 N. Y. 358; *Durrett* v. *Davison*, 122 Ky. 851; 93 S. W. Rep. 25; 8 L. R. A. [N. S.] 546.) The whole argument of the relator is based upon a misconception of the sovereign power of the Legislature to tax. Every question raised upon this appeal has been frequently raised and passed upon by the courts. They are old questions under a new and unusual state of facts. Nevertheless, under the old and oft-restated principles, governing the power and authority of the State to tax and the construction of the tax laws by the courts, must be found the principles which are decisive of the questions which are here raised under an unusual situation. "The power of taxation rests upon necessity, and is an essential and inherent attribute of sovereignty, belonging as a matter of right to every independent State or government, and it is as extensive as the range of subjects over which the power of that government extends." (37 Cyc. 715; *People ex rel. Scott* v. *Pitt*, 169 N. Y. 521.)

The power and authority to impose taxes is vested exclusively in the Legislature. That power is absolute, except as restricted by the Constitution of the State or nation. It is for it to determine and its determination is final, within said restriction, upon all matters involving the purpose of a tax, its extent, apportionment, upon what property or class of persons it shall operate, whether it shall be general or limited, whether it shall be a charge upon property, upon persons, or upon both, and the time and manner of its collection. All of the incidents of taxation are within the control of the Legislature. (37 Cyc. 724; 27 Am. & Eng. Ency. of Law [2d ed.], 613; *People ex rel. Griffin* v. *Mayor, etc., of Brooklyn*, 4 N. Y. 419; *Genet* v. *City of Brooklyn*, 99 id. 296; *Gautier* v. *Ditmar*, 204 id. 20.) "In the absence of constitutional restrictions, the power of the Legislature in regard to taxation is practically absolute and unlimited." (37 Cyc. 728.)

The fact that the statute in question is retroactive does not make it unconstitutional. (*People ex rel. Eckerson* v. *Board of Education*, 126 App. Div. 414; affd., 193 N. Y. 601.)

The Legislature undoubtedly had the power, when it enacted the Town Unit School Law (Laws of 1917, chap. 328), to provide that the expense of building a new schoolhouse in

any district should all be paid by a tax charged against that school district as it existed before the enactment of said law. In that event the tax for the new school building would have been assessed against district No. 1. That would have required the appellant, a taxpayer in that district, to pay his share of the total cost of the new building. The power of the Legislature to enact such a law is not questioned. The fact that the Legislature did not make the whole cost of the schoolhouse a charge against district No. 1, but distributed it over the whole town school unit, resulted in a lower tax for the taxpayers of said district, including the relator. That fact did not, however, give the relator, and the other taxpayers of district No. 1, a vested right to have the said tax remain unaltered. The Legislature had the same discretion to reapportion such burden as it had in the first instance to determine the tax district which should bear the expense of the new building. What it could have done in the first instance, it could do by subsequent enactment. The control of the Legislature over the subject did not end with the passage of the act in question. The new condition which arose when the Town Unit School Law was repealed called upon the Legislature to enact a new law for the purpose of bringing about a just and equitable distribution of the burden.

Almost the exact situation disclosed in this case existed in the case of *Durrett* v. *Davison* (122 Ky. 851; 93 S. W. Rep. 25; 8 L. R. A. [N. S.] 546). A statute of the State of Kentucky provided for the building of turnpikes, and made one-half of the cost of the same a charge against the road district and the other one-half against the general district at large. It was subsequently discovered that the charge against the road district property owners was inequitable and unjust and the Legislature passed another act reapportioning the tax, shifting the burden from the road district property owners to the property owners in the general district, thereby greatly increasing the tax of the property owners in the general district outside of the road district. The statute was attacked upon the ground that it was unconstitutional and the same arguments were advanced as in this case. The court held the act to be constitutional. It held that the fact that it was retroactive did not affect its validity. In the course of the

opinion the court said: " The appellant had no vested right in immunity from taxation. It is not, of course, pretended that she had any special contract of immunity, and in the absence of such, no vested right could accrue to her out of the fact that the Legislature, in the original apportionment of the burden for paying the turnpike bonds, placed upon her land less than might have been done. It is not disputed, and indeed, cannot be, that the Legislature had the power, originally, to provide for the building of the turnpikes in question by a general tax over the whole county, which, of course, would have included appellant's land; that it did not do so, but placed upon her land only one-half the burden, may be considered an act of grace, not of right; and she has no complaint now, that the grace of the sovereign has been withdrawn, and the burden reapportioned, as might originally have been done." Many cases are cited in a note to this case in 8 Lawyers Reports Annotated (N. S.), 546.

The law of this State seems to be settled, by a long line of cases going back to the earliest days, to the effect that what the Legislature could originally have done it can do by ratification and confirmation subsequently. That which the Legislature might have dispensed with altogether, by a prior statute, may be cured by a subsequent statute. The Legislature may validate retrospectively any proceeding which it might have authorized in advance. Statements of the general rule substantially like the above statement are found in many decisions. (*Van Deventer* v. *Long Island City,* 139 N. Y. 136; *Smith* v. *City of Buffalo,* 159 id. 427; *People ex rel. American Exchange Nat. Bank* v. *Purdy,* 196 id. 282; *Matter of Van Antwerp,* 56 id. 261.)

In the case of *People ex rel. Lucey* v. *Molloy* (35 App. Div. 136; affd., 161 N. Y. 621, on opinion below) the question was whether or not a statute was valid which attempted to charge against the city of Troy, at large, the amount of an assessment made against certain abutting property owners on a certain street, and which required the city to refund to such property owners certain taxes paid by them. The statute was held to be valid. In the opinion in the Appellate Division it was said: " It cannot be said with respect to the power of taxation, which is plenary except as limited by the Con-

stitution, that the Legislature cannot by further legislation revise and correct its enactments so as to accomplish in the final result the same justice which, it may be presumed, it would have provided for in the first instance if it could have foreseen the actual results to follow upon its first enactments. (*Genet* v. *City of Brooklyn,* 99 N. Y. 301; *State of N. Y.* v. *County of Kings,* 125 id. 320; *People* v. *Supervisors,* 67 id. 115; *People ex rel. Otsego County Bank* v. *Supervisors,* 51 id. 409.) " (See, also, *Matter of Lockitt,* 58 Misc. Rep. 5; *People ex rel. Eckerson* v. *Board of Education,* 126 App. Div. 414; affd., 193 N. Y. 601.)

In the case of *State of New York* v. *County of Kings* (125 N. Y. 312) the court said: " Principles of justice as well as equity required that irregularities produced by the operation of statutes should be remedied by the Legislature."

The question of how the equities shall be adjusted in this case is not here, as the district superintendent has not been allowed to proceed with the hearing as required by statute. It may be that such an adjustment will be made that the relator and all other taxpayers will be entirely satisfied. If they are not, they have a remedy by certiorari provided in the statute. All we are required to pass upon is the constitutionality of the statute and we are satisfied that it is a valid and constitutional act.

The only other case which has arisen under the statute in question which has been called to our attention is the case of *People ex rel. Hill* v. *Williams* (190 App. Div. 534) in the Second Department. There the question passed upon was whether or not the reapportionment made by the district superintendent was authorized by the statute. The court treated the statute as valid, and it does not appear from the opinion that the constitutionality of the statute was questioned.

The order should be affirmed, with costs.

All concur.

Order affirmed, with costs.