## Wilson, County Judge, et al. v. Dean, et al.

(Decided October 12, 1917.)

### Appeal from Ohio Circuit Court.

1. Prohibition—Jurisdiction, Proceedings and Relief.—If a county court has jurisdiction to hear, determine and pass upon a case, the circuit court is not authorized, by a writ of prohibition, to deny to the county court the exercise of its jurisdiction, although the circuit court may be of the opinion that the county court will make an erroneous decision.

2. Counties—Apportionment Into Magisterial Districts.—Under article VII, subdivision I, of Kentucky Statutes, the county court has exclusive jurisdiction of the apportionment and reapportionment of the county into justices' districts, and its jurisdiction is as unlimited as the nature of the subject will admit.

3. Counties—Apportionment Into Magisterial Districts—Notice.— The publication of notice, as required by section 1082, Kentucky Statutes, of the intention of making application for the appointment of commissioners to reapportion the county into justices' districts is a jurisdictional fact, which must exist before the county court can exercise its jurisdiction over the subject matter, but if this fact actually exists, the jurisdiction is complete.

4. Counties—Apportionment Into Magisterial Districts—Jurisdiction —Order.—An order of the county court appointing commissioners to reapportion the county into justices' districts, which recites that a copy of the notice of the motion is filed, and that the court has satisfied itself that the publication of the notice, as required by the statute, has been made, and the notice is of record, the order is not void upon its face, because it does not specifically show that proof was heard and that the notice had been published by posting a copy at the court house door and at three public places in each justices' district, for twenty days before the term of court at which the application for the appointment of commissioners was made, but the court having unlimited and exclusive jurisdiction of the subject matter, it will be presumed, that the necessary jurisdictional facts existed, until the contrary is shown.

5.   Courts—Jurisdiction of County Court.—Where the jurisdiction of
the county court over the subject matter is complete and unlimited,
its action will be presumed to be within its jurisdiction, and its
judgment in reference thereto will not be held to be void upon its
face, unless the record shows that the jurisdictional facts did not
exist.

6.   Elections—Primary Elections.—A primary election for the nom-
ination of a candidate is not an election, as contemplated by sec-
tion 1082, Kentucky Statutes.

J. S. GLENN and GLENN & SIMMERMAN for appellants.

HEAVRIN & MARTIN and WOODWARD & KIRK for appellees.

OPINON OF THE COURT BY JUDGE HURT—Reversing.

On the 7th day of May, 1917, which was the
first day of a regular term of the Ohio county
court, C. W. Moseley and thirty-three others, all of whom
were citizens of Ohio county, filed in that court two writ-
ten applications, in each of which, it was stated, that a
reapportionment of the county into magisterial districts
had not been made for over four years, and requested
the court to appoint commissioners for the purpose of re-
apportioning the county into magisterial or justices'
districts.   With these applications, they filed a written
motion for the appointment of commissioners and the
copy of a written notice, which purported to be a copy
of the notice which had been given by them of their in-
tended application to the court for the appointment of
commissioners.   Thereupon the county court caused to
be entered an order as follows:

"C. W. Moseley, et al.

v.                                  Petition

"Re-Districting Ohio County into Justices' Districts.

"Comes C. W. Moseley, et al., and filed copy of notice
of the motion hereinafter set out and likewise files two
petitions of various citizens, asking that Ohio county be
apportioned into Justices' Districts, and moved the court
to appoint commissioners to apportion Ohio county into
Justices' Districts, as provided by law, in section 1082,
Kentucky Statutes of 1915, and the court being satisfied
that the notices of said motion have been properly posted,
and being sufficiently advised, ordered and directed that
said reapportionment be made, and appointed W. N.
Stevens, E. F. Render and W. S. Brown, each of whom
is a resident citizen of Ohio county, over twenty-one

years of age, residing in different Justices' Districts and in different portions of the county, as commissioners to make said reapportionment in the manner and method as provided by law, and that this cause is continued for commissioners' report.''

On the day following, the commissioners reported. Two of them joined in making and filing a report, which divided the county into seven justices' districts instead of eight, as then existed. The other commissioner filed a separate report, in which he recommended that the apportionment then existing be continued. The reports were filed, and the cause continued until the regular June term of the court, which came on the first Monday of June, to give opportunity for any, who might desire, to file exceptions to the report. When the regular term of the court arrived the appellees, W. S. Dean, S. A. Bratcher, J. A. Bolling, B. F. Rice, and Geo. Johnson, and others, filed exceptions to the majority report, and the cause was ordered to be continued until June 11th, for a hearing upon the exceptions. The exceptions were to the jurisdiction of the court, because the statutory requirement had not been complied with, as to the giving of notice of the application for the appointment of commissioners, and, also, to the merits of the controversy. A demurrer to the sufficiency of the notice and the written application was, also, filed, and a motion entered to set aside the order appointing the commissioners. A hearing was had before the county court on the 11th, and 12th, and 14th days of June, of the demurrer and motion, as well as the exceptions, and the court overruled all after hearing such evidence as was offered by the parties. The court then rendered a judgment confirming the majority commissioners' report, and overruling the motion of the appellees, and those joined with them, to quash the report, and adjudging that the county be reapportioned into justices' districts in conformity to the report of the majority of the commissioners. The judge of the court reduced the judgment of the court to writing, which he delivered to the clerk of the court, with directions to enter same upon the order book of the court. However, before the clerk had placed same upon the order book of the court, and before same had been signed upon the order book by the judge, the appellees filed a petitilon in the office of the clerk of the Ohio circuit court, by which they prayed for writ of prohibition against the appellant, John B. Wilson, judge of the Ohio

county court, and the clerk of that court, to prohibit the judge from taking any further proceedings or step in the matter of the reapportionment, and to restrain the clerk from entering the judgment which had been rendered and prepared by the county judge. A temporary restraining order was obtained against both judge and clerk. The judge filed a demurrer to the petition, and, also, an answer denying the allegations of the petition. The affirmative matter in the answer was controverted by a reply. Evidence was heard and on final hearing the temporary writ of prohibition was made a permanent one. From this judgment the judge and clerk have appealed to this court.

Although the soundness of the judgment of the county court was put in issue, and a great deal of evidence offered upon that subject and other questions, it is only deemed necessary or essential to a determination of this cause that but one question be considered. Section 479, Civil Code, limits and defines the powers of the circuit court to grant a writ of prohibition against an inferior judicial tribunal as follows:

"The writ of prohibition is an order of the circuit court to an inferior court of limited jurisdiction, prohibiting it from proceeding in a matter out of its jurisdiction."

The fact that an inferior court will decide a cause erroneously or will enforce an erroneous judgment or order is not a ground, which will justify the interference of the circuit court by way of a writ of prohibition, if the matter being dealt with by the inferior court is one which is within its jurisdiction. In Thomas, etc., v. Davis, etc., 33 R. 569, this court said:

"A writ of prohibition is an order, which is issued by the circuit court to an inferior court of limited jurisdiction, prohibiting it from proceeding in a matter out of its jurisdiction. If an inferior court has jurisdiction, the circuit court has no power to grant a writ of prohibition for the purpose of denying to the inferior court the right to hear, pass upon and determine a case, although the judge of the circuit court may be of the opinion that the judge of the inferior court will decide the case improperly."

This rule has been uniformly adhered to by the adjudications in this court. Bank Lick Co. v. Phelps, 81 Ky. 613; Hughes v. Holbrook, 32 R. 1210, 108 S. W. 625; Scott v. Tully, 20 R. 1734; Arnold v. Shields, 5 Dana

19; Commonwealth, etc., v. Weissinger, Judge, 143 Ky. 368; Chiles v. Howard Sheffer's Ex'ors, 146 Ky. 42. The power of the circuit court to grant such writ should not be confused with the original jurisdiction of this court provided for by section 110, of the Constitution.

Hence, if the county court had jurisdiction of the matter in controversy, the circuit court had no jurisdiction to interfere with it by a writ of prohibition. Article 7, subdivision I, of Kentucky Statutes, embraces sections 1078, 1079, 1080, 1081, 1082 and 1083, and the statutory provisions upon the subject, which give jurisdiction to the county court to deal with the matter of apportioning and reapportioning a county into justices' districts. By the first of the sections, *supra,* it is provided, that there shall be established in each county not less than three nor more than eight justices' districts. Section 1079, *supra,* provides that the county judge of each county shall in open court, on the first Monday of August, 1892, appoint three competent citizens of the county over twenty-one years of age, residing in different justices' districts and different portions of the county as commissioners to divide the county into not less than three nor more than eight justices' districts, as nearly equal in population and territory as may be. Section 1080 provides that the commissioners shall within twenty days after their appointment lay off, fix and establish the boundary lines of the districts, and file a report in writing in the office of the county clerk showing the boundary of each district, with the estimated population of it, and at the next regular term of the county court commencing not less than ten days after the report is filed, any citizen may file exceptions to the report and the court shall fix a day not later than ten days after the filing of the exceptions for the trial thereof, and on the trial shall dispose of the same as it may deem proper, and if the report is sustained, it shall be ordered entered of record establishing the boundary of the districts. Section 1081 provides that the districts shall be so established that the boundary shall not cross the boundary line of any election precinct. Section 1082 is as follows:

"A county may be reapportioned into justices' districts at any term of the court in the same way, four years after a previous apportionment, but which apportionment shall not be made within sixty days previous to an election of a justice of the peace; nor shall commissioners be appointed to make the reapportionment unless

notice of the proposed application for the apportionment
be given by written or printed notices, posted at the court
house door, and in three or more public places in each
justices' district of the county, at least twenty days be-
fore the term of the court at which the application for
the appointment of commissioners is made; and, on the
trial of the exceptions to the commissioners' report, if it
shall appear that a reapportionment is not necessary,
the court may refuse the application and dismiss the pro- ·
ceeding at the cost of the applicant."

It will be observed from the provisions of this sec-.
tion, that the giving of the notice by posting a written
notice at the court house door of the county and of three
notices in each migisterial district of the county of
the proposed application for the appointment of com-
missioners for twenty days previous to the term of the
court at which the application is made is a jurisdictional
fact, which must exist before the county court is author-
ized to appoint commissioners. The statute is silent as
to how the court is to receive its information in regard
to the posting of the notices. If it is necessary for the
court to satisfy itself at that stage of the proceedings
that the notice has been given as provided in the statute,
it is necessarily compelled to obtain its information by
testimony taken as in an *ex parte* proceeding and by the
hearing of proof, in a way which is not provided for by
anything in the statute. This proceeding would be *ex* ·
*parte* at this time, unless some citizen should object to
granting the motion, upon the ground that the notice had
not been given. It is, also, apparent that the failure to
give the notice of the motion for the appointment of
commissioners is a matter which could be raised upon
exceptions to the report, because if no notice had been
given or insufficient notice had been given of the motion,
there could be no person with knowledge that it was in-
tended that such motion should be made, other than the
person making the motion. It goes without saying, that
the appointment of commissioners for a reapportion-
ment to be made without the giving of the notice would
be a void proceeding. Although the order appointing the
commissioners might recite the fact that the notice of the
application had been posted at the court house door and
at three public places in each magisterial district for
twenty days before the term of the court at which the
application was made, and although the order might re-
cite that the court had satisfied itself by proof heard

upon the motion, it would not be conclusive upon that question upon a direct attack upon the order. It still might be shown by proof *aliunde,* that the notice was not really and in fact given. The statute does not provide that the notices shall be posted by any official or that there shall be any official return to the court by any officer, which could give the publication of the notice verity, as is required upon the execution of a summons or a notice in any judicial proceeding served upon an individual. A close scrutiny of the evidence offered by the appellant as to the publication of the notice of the intended application for the appointment of commissioners to reapportion the county into justices' districts shows that the requirements of the statute were substantially complied with in that particular. There being eight magisterial districts in the county, it required the proof of the publication by the posting of twenty-five separate notices, one of which must be posted at the door of the court house of the county and three at public places in each of the justices' districts. To show such publication it was necessary to prove the posting of the notices by many different persons, all of whom could not state distinctly the exact day the notice was posted or when he observed the notice having been posted, but the evidence showed without much doubt, that all of the notices required by the statute were posted at least twenty days before the term of the court at which the motion was made for the appointment of commissioners, and the notices stated in substance the time when and the place where the motion would be made and the purposes for which the motion would be made. Thus it is seen that the county court actually and in fact had jurisdiction of the matter of the appointment of commissioners for the apportionment proposed, at the time, the order was entered appointing the commissioners.

It is insisted, however, for appellants, that the order appointing the commissioners and each step thereafter to the judgment is void, because the record of the proceedings does not show the necessary facts to give the court jurisdiction of the subject, and the familiar doctrine, that the records of the courts of limited or special or inferior jurisdiction must show the facts necessary to show that they have jurisdiction or else their proceedings are invalid, although they may in fact have had jurisdiction. The rule, that courts of special, limited or inferior jurisdiction must by their record show all essen-

tial jurisdictional facts upon which their authority is based to act in a case, has often been invoked by this court. It is, also, said that this rule applies to jurisdiction over special statutory proceedings, which are not according to the course of the common law, and before such proceedings can be held to be valid the jurisdictional facts must appear by averment and proof in the record, but the evidence on which the court bases its decision or judgment need not appear in the record. 11 Cyc. 694, 695; Triplett v. Waring, 5 Dana 448; Grant v. Tams & Co., 7 T. B. M. 218; Ormsby v. Lynch, Littell Sel. Cas. 303; Taylor v. Moore, 112 Ky. 330; Newcomb v. Newcomb, 13 Bush, 544; Clarey v. Marshall, 4 Dana 95; Jacob's Admr. v. L. & N. R. R. Co., 10 Bush 263; Williams v. Williams, 3 Litt. 40; Craig v. Barker, 4 Dana 600; Guyton v. Shane, 7 Dana 498; Rice v. Rice, 10 Bush 420. This court has not always and in every instance applied the above rule to the proceedings of the county court in every character of proceedings. In Jacob's Admr. v. L. & N. R. R. Co., 10 Bush 263, the validity of an order of the county court appointing a personal representative for a decedent, and which did not show the jurisdictional fact, that the decedent was domiciled in the county, wherein the county court sat, which made the order, was called in question. This court held in that case that the above rule applying to courts of inferior, limited or special jurisdiction did not apply, as the county court in probate matters was a court of general and exclusive jurisdiction. In that case the court said:

"There is a marked distinction between a court having a general and exclusive jurisdiction over a limited number of subjects and a court having no jurisdiction over certain subjects, except in cases in which certain essential and indispensable facts exist. In the latter case the rule that the facts conferring the jurisdiction must appear in the record of the proceedings, applies to all courts, circuit as well as county.

"The rule does not grow out of nor depend upon the fact, that the court has jurisdiction of only a limited number of subjects, but that it has not full and complete jurisdiction of the subject matter about which it assumes to act.

"If the jurisdiction over the subject matter is complete and unlimited, the action of the court will always be taken to be within its authority and jurisdiction, unless the contrary appears."

The jurisdiction of the county court in the matter of reapportioning the county, in which it sits, into justices' districts is exclusive and complete, and as unlimited as the nature of the matter will admit of. No other court has or can exercise any original jurisdiction in regard to it. It is, indeed, a special statutory proceeding, but the jurisdiction to act in such a matter is common to all the county courts in the state, and the county court acquires jurisdiction to act in such matter by the publication of the notice, as prescribed by the statute, just as the circuit court acquires jurisdiction of a defendant in an action for debt, by the service of a summons, and thereby jurisdiction to act upon the subject matter of the action. Under the rule above stated, that where the jurisdiction over the subject matter is complete and unlimited, that the action of the court will always be presumed to be within its authority and jurisdiction, unless the contrary appears, it seems that the order of the county court, in the present instance, would not be void upon its face, as the want of jurisdiction does not appear upon the face of the record.

The county court is given statutory authority and jurisdiction to hold inquests and inquire into the mental condition of imbeciles and lunatics, when a circuit court is not in session in the county, and if such are convicted, to appoint committees for their persons and estates. In such cases, the presence of the accused in court at the inquest or if unsafe to bring him into court, the oath or affidavit of two physicians that they have examined the accused and that in their opinion he is of unsound mind, and that it is unsafe to bring him into court, and notice to the accused are jurisdictional facts, and it follows, that if an inquest is held without the presence of the accused or notice to him, the inquest is void. In Porter v. Eastern Kentucky Asylum, 121 Ky. 816, the defense was upon the ground that the inquest was void, and the court said:

"While the inquest is void if held without notice to the lunatic and without his presence at the trial, this fact is not shown by the inquest held here. The reasonable construction of the record is that the lunatic was in the custody of the court. The law requires his presence at the inquest, and the presumption is that the officer did his duty. If he was not present at the inquest, this fact must be set up by plea."

In Eversole v. Eastern Kentucky Asylum, &c., 30 R. 989, the validity of the judgment of the county court adjudging that one Daugherty was a lunatic was assailed upon the ground that it was void, because the record did not disclose that Daugherty was in the presence of the jury, in person, or had been served with notice of the proceeding when the inquest was held, and the court said:

"But this court, in the recent case of Porter v. Eastern Kentucky Asylum, 28 Ky. Law Rep. 796, 90 S. W. Rep. 263, held that the presumption that the officers in the county court did their duty would prevail, and that it was the duty of one attacking the validity of the judgment to affirmatively show that the lunatic was not present in the court at the trial. The pleadings in the case before us allege that Isaih Daugherty was committed to the plaintiff institution from the county of Harlan, December 13, 1890, by order of the county court of Harlan county, which had jurisdiction of the party and the sub-. ject matter, and, in the absence of any allegation to the contrary, as said in the case of Porter v. Eastern Kentucky Asylum for the Insane, *supra,* the presumption is, that the trial in the Harlan county court was in due form, and that the requirements of the statutes were fully complied with."

In the recent case of Louisville Title Co. v. Darnell's Committee, 149 Ky. 312, Darnell had been adjudged of unsound mind in the county court, and thereafter the judgment was attacked in the circuit court because of the failure of the county court record to show certain jurisdictional facts. Upon appeal this court held, that it being a judgment of the county court, proof might be introduced *aliunde* to show service of process, and the fact that the circuit court was not in session when the inquest was held in the county court. The case of Anderson's Committee v. Anderson's Admr., 161 Ky. 18, is in line with the above mentioned cases.

It seems now to be the well-settled doctrine, that although the county court has a limited and special jurisdiction over the persons and estates of lunatics, that it is a court of record and its judgments in the matter of inquests will not be held to be void, because the record fails to disclose the jurisdictional facts, but the presumption will be indulged, until the contrary is shown, that the jurisdictional facts existed.

The county courts, under the local option statute, are given jurisdiction to order an election held under

that statute in the county or district of a county, when a petition or petitions are filed in the county court with the names of a certain per centum of the legal voters, voting at the preceding general election, in the district to be affected, attached thereto. Such petition with such number of names of legal voters attached thereto is a jurisdictional fact, authorizing the county court to act upon the matter. It has been held, that in such proceedings it is not necessary that the petition should show that the signers were legal voters, or resided in the district to be affected, or that they equaled the number required by the statute, but the county court should, before entering the order calling the election, satisfy itself of the existence of the jurisdictional facts, and could require proof of the residence of the signers, the genuineness of their signatures, and the number of the persons who voted at the preceding general election. If proof was made in such case, it would necessarily be *aliunde* and not embraced in the record, but it has, also, been held that although the county judge should order the election to be held without the hearing of any proof of the necessary jurisdictional facts, the court would have jurisdiction to do so, and the election would be valid, if the requisite number of legal voters had, in fact, subscribed to the petition, and the order was made in conformity to the statute. Wyatt v. Ryan, 113 Ky. 306; Howard v. Stanfill, 31 R. 207. When a local option election is contested the fact that the record of the proceedings does not show that the requisite number of legal voters signed the petition does not render the election or the order calling it void, but such fact may be shown by proof *aliunde,* and it may be proven by the same character of evidence that the requisite number of legal voters did not sign the petition, and thus show that the court was without jurisdiction to order the election held. The order calling the election is not void, unless the non-existence of the necessary jurisdictional facts appears upon the record.

In the instant case, the proceeding is a special one and controlled by the statute which authorizes it, and much depends upon the requirements of the statute as to what the record should show or what it can show. The application for the appointment of the commissioners and the notice on file each show that a division of the county into justices' districts had not been made for eight years. The order shows the filing of the notice of

the motion, and the appointment of the commissioners, with the qualifications required by the statute, and directs them in the performance of their duties, as required by the statute, and the further fact, that the county judge had satisfied himself that the notices had been published, as required by the statute. The jurisdictional facts are thus all shown by the record, unless it should be required that the record should show explicitly that one notice was posted at the court house door and three in each justices' district for twenty days before the first day of the term at which the motion for the appointment of commissioners was made. The record does not show that the notice was not published, as above stated, and the court having exclusive and unlimited jurisdiction of the subject matter, as far as its nature will admit of, under the authorities cited, it should be presumed, that the court had done its duty, and that the publication had been made as required by law, and the order was thus not void upon its face, nor the proceedings thereafter. The proof shows that the county judge did not require nor hear proof as to the publication of the notices, but it does not appear that he did not otherwise satisfy himself that the publication had been made, as required by law. It should be borne in mind, that the statute does not require the court to hear evidence of the publication of the notices of the motion before making the order appointing the commissioners, nor the making of any record upon the subject. The court, for the purpose of avoiding expense and confusion, before making such an order, should be satisfied that due publication of the intention to apply for the appointment of commissioners had been made, but if proof should be heard to that effect upon the motion, the failure of the notices to be published, as required by law, would still remain a ground of exception to the confirmation of the report of the commissioners. The failure of the court to hear any evidence upon the motion as to the publication of the notices before appointing commissioners would not prevent its having jurisdiction, if it should appear, that the notices had in fact been published, as required by law, as held in Howard v. Stanfill, *supra*. It seems that the same rule should be applied to the records of a county court, in a proceeding under the statute to reapportion a county into justices' districts, as is applied to inquests for lunacy, and in local option elections.

(b) A primary election for the nomination of a candidate for justice of the peace is not such an election, as is contemplated by the statute, which forbids a reapportionment into justices' districts within sixty days of the election of a justice of the peace, as a nomination is not an election. Montgomery v. Chelf, 118 Ky. 766; Morgan v. Goode, 151 Ky. 284; Hodge v. Bryant, 149 Ky. 110.

Being of the opinion that the county court was acting within its jurisdiction in reapportioning the county into justices' districts, the circuit court was without authority to prohibit it from so doing by a writ of prohibiton, and the judgment is therefore reversed, and cause remanded, with directions to set aside its judgment and to dismiss the petition for writ of prohibition. To prevent confusion, no judgment should be entered reapportioning the county into justices' districts until after the next regular November election.