## Yewell, et al. v. Board of Drainage Commissioners of Daviess County, et al.

(Decided March 12, 1920.)

### Appeal from Daviess Circuit Court.

1. Drains—Order Confirming Viewers' Report—Jurisdiction.—Under the drainage act of 1912 (Sec. 2380, Ky. Statutes) the order of the county court confirming the viewers' report and referring the proceeding to the board of drainage commissioners for construction of the improvement and preparation of assessment roll does not necessarily terminate the jurisdiction of the county court, and it may retain jurisdiction until every incident of the litigation is terminated.

2. Drains—Constitutionality of Act—Jurisdiction—Parties.—The drainage law of 1912 was unconstitutional only insofar as it authorized a levy and collection by the board of drainage commissioners of assessments against the lands of citizens without giving them an opportunity to be heard upon final assessments against the lands. Hence, where the county court by its order of

reference to the drainage board expressly retained jurisdiction for the purpose of giving landowners, who were parties, an opportunity to be heard, and they were given this opportunity after notice by publication; every constitutional objection to the act was removed.

3. Drains—Act Not Ex Post Facto.—The act of the legislature amending the drainage act of 1912 and confirming all proceedings had theretofore in which the parties had been given an opportunity to be heard, is not an ex post facto law in the sense in which such laws are prohibited by the constitution, but is curative only.

4. Drains—Order Confirming Viewers' Report—Collateral Attack.— Where the county court expressly retained jurisdiction by the order confirming the viewers' report and referring the proceeding to the board of drainage commissioners, and the landowners had an opportunity to be heard upon final assessments against the lands, orders and judgments entered subsequent to the confirmation of the viewers' report and reference to the drainage commissioners were not void, and parties who were properly summoned and before the court in that proceeding may not attack the validity of such orders and judgments by a collateral proceeding.

5. Corporations—Statement Upon Whom Process May Be Served— Failure to File.—The failure of a non-resident corporation to comply with section 571 of the statutes by filing with the secretary of state a statement designating an agent upon whom summons may be served does not render a contract with such corporation void but voidable only at the option of the other party, who may enforce it.

CLEMENTS & CLEMENTS and T. F. BIRKHEAD for appellants.

J. R. HAYS and AUD & HIGDON for appellees.

Opinion of the Court by Judge Clarke—Affirming.

The appellants, who were plaintiffs below, are two hundred and fifty of over twelve hundred landowners and own 11,000 acres of the 56,000 acres of land included in the Panther creek drainage district in Daviess county, Kentucky. The district was established and organized upon the petition of J. H. Hickman and others, filed in the Daviess circuit court on May 16, 1912, under the provisions of the drainage law enacted at the 1912 session of the legislature, now section 2380, Kentucky Statutes, and that action was finally terminated before the 1912 drainage act was amended and a new drainage law adopted at the 1918 session of the legislature. Appel-

lants were parties to the proceeding to establish the district, having been personally summoned as well as given notice by publication of every action taken by the court in that proceeding, as required by the provisions of the 1912 act. Yet they made no objection or filed any exception to any order or judgment entered in that action and no appeal has ever been prosecuted from any judgment entered therein, nor has any final order or judgment in that action been modified or set aside.

By this action appellants seek to enjoin the board of drainage commissioners of Daviess county from issuing bonds or carrying out its contracts with the McWilliams Northern Dredging Company, the Vincennes Bridge Company and the Champion Bridge Company for the construction of the drains, bridges, etc., as ordered and approved by the court in the proceeding to establish and organize the drainage district; and to enjoin the board of drainage commissioners from paying attorney fees and other items allowed therein as costs, or assessing their lands to pay for said improvements in the manner and for the amounts as ordered by the court in that action.

Manifestly therefore the first and only question save one involved upon this appeal, if it is to be decided against appellants, is whether or not they may, in this collateral proceeding, attack the orders and judgment which they admit were entered in the other proceeding to which they were parties and made no objection. The right so to do is asserted upon the ground that all orders and judgments entered in the original proceeding after the confirmation of the viewers' estimate of cost and report upon land classifications are void, and this upon authority of Williams v. Wedding, Judge, 165 Ky. 361. In that case, in considering the constitutionality of the 1912 drainage law upon demurrer to a petition complaining of assessments as made by the board of commissioners, it was held that the act is violative of sections 2 and 14 of the Constitution of this state and article 14 of the Federal Constitution insofar as it attempts to authorize the board of drainage commissioners, after the court had lost jurisdiction of the case, to levy and collect assessments against the lands of citizens without giving them a right to be heard as to whether the assessments

were made in accordance with the final report of the viewers.

It was further held that the county court lost jurisdiction of that case when, after the viewers' final report had been confirmed, the proceeding then pending in court was referred to 'the board of drainage commissioners for all further proceedings. This was unquestionably true, if the order of reference entered in that case *finally* transferred all matters that might thereafter arise to the commissioners, as presumably it did, and as evidently was contemplated by the act would be done.

Under this view of its application, which was the only view in which it was presented or considered, the act was unquestionably unconstitutional for the reasons and to the extent indicated in the Williams v. Wedding case. In the case at bar, however, the act was very differently applied and in a manner which, in our opinion, relieves it of all unconstitutional features.

Appellants in their petition alleged that the viewers' final report was confirmed and the case referred to the board of drainage commissioners for the construction of the improvement and to prepare an assessment roll by order of the county court entered on January 23, 1917, and an order entered on the _____ day of _____, 1917. It is one or the other or both of these orders which they claim terminated the proceeding in the county court, and by reason of which 'the court lost jurisdiction of the proceeding with the consequence that all subsequent orders and judgments are void. They did not file with or incorporate substantially into their petition either order, but a copy of the order of January 23, 1917, which is the only one here, is filed with and made part of the answer of the defendants, who contend that the court did not by that or the other order finally refer the case to the board of drainage commissioners, but upon the other hand expressly retained jurisdiction of the case in order to give appellants and other parties thereto an opportunity, such as was denied the parties in the Williams-Wedding case, to be heard upon any objection that they might have to the manner in which the board of drainage commissioners might perform the work of constructing the improvement and levying assessments against the land of parties to the action. The order is very lengthy so we shall not

copy it in full but only such portions as clearly indicate its character and purpose.

The order of January 23, 1917, starts out by stating that "this day came" numerous parties and filed exceptions to the report; that the board of drainage commissioners filed an amended report describing more definitely the course of the proposed ditch and the amount of excavation that would have to be made; that the viewers filed an amendment to their final report correcting certain errors and making some changes therein; that numerous parties had asked and been allowed further time in which to file exceptions to the report; that proof was heard and the court satisfied that notice by publication of the hearing had been given as required by the act. It is then ordered that except as to the parties who had been given further time that "said final report of the viewers be confirmed."

Following this order of partial confirmation it is adjudged that the scale of assessment to be made by the board of drainage commissioners shall be in the proportion and according to the classification of lands as indicated in the viewers' report, and these classifications and proportions are recited in the court's order, following which the order continues: "that except as to the parties named above the classification of the land made in said report is confirmed and in calculating the assessment against the various landowners, the board of drainage commissioners shall follow the classification as made by the viewers except as may be hereafter changed with reference to the parties named above."

The order concludes as follows:

"It is further ordered that when the board of drainage commissioners file their assessment roll, 'they shall file therewith a full statement of all items of expense and costs that enter therein and that said assessment roll and said report of expenses and costs shall be set for exceptions and all parties interested shall be given a reasonable opportunity to file exceptions to any issues raised by said report or said assessment roll not raised by former reports and pleadings herein and to any item of costs or expense included therein which are not included in or covered by former reports herein."

From a mere casual reading of this order it is apparent that it is neither a final confirmation of the view-

ers' report nor a final reference of the case to the board of drainage commissioners, or in any sense a final judgment such as terminated the proceeding in court.

Upon the other hand it was clearly an order retaining jurisdiction of the court for the purpose of giving all parties to the action an opportunity to be heard in that action upon any objection that they might desire to make with reference to the manner in which the work of constructing the improvement and preparing the assessment roll against the landowners might be performed by the board of drainage commissioners, and hence we must presume that the later order of reference was not a final order. The opinion in Williams v. Wedding, *supra,* is conclusive that appellants were in court and bound by this order, and so much they admit. They were, therefore, it seems to us, bound to take notice of the fact that this was not a final reference to the board of drainage commissioners for all further proceedings, but was just the contrary. By failing to file exceptions to the viewers' report they necessarily waived any objection to matters contained therein, and by failing to object or except to the order they also waived any objection thereto insofar at least as the court had power to make such an order.

Pursuant to this order and presumably to the later order of reference the board of drainage commissioners filed in that proceeding what is styled a "supplemental report" on October 16, 1917, in which they reported that they were unable to construct the improvement at the estimated price contained in the viewers' report of $392,-315.03 exclusive of costs of surveying, court costs, attorneys' fees and board expenses, because of the unusual increase in prices of labor and materials between the summer of 1915, when the estimate was made, and September and October, 1917, when they attempted in the manner pointed out in the act to contract for the construction thereof; and this fact is conclusively established by affidavits accompanying the report.

In the report they also set out in minute detail the increased cost for the various kinds of labor and material necessary to a construction of the improvement over the estimated cost. Not only so, they reported every item of expense that would have to be incurred to construct the improvement, totaling $616,746.56, including

court costs, attorneys' fees, costs of surveying and board
expenses, and they further reported that to meet this ex-
pense the assessments that must be made against the
landowners would vary according to classification from
$18.60 for class A down to $1.86 per acre for class J,
the exact amount per acre for intermediate classes being
stated to the cent for each class.  When this report was
filed in the proceeding in the county court the court set
it forward for exceptions as in the order of January 23,
1917, was provided would be done and gave notice by
publication in the manner required by the act for giving
additional notice to the parties to the action of a hearing
upon the viewers' final report.  None of the appellants
filed any execptions to this report and it was confirmed.
It is therefore clear that appellants were bound by the
orders and judgments which the court entered in that
proceeding subsequent to the order of January 23, 1917,
unless by that order the court lost jurisdiction  of  the
case.  They had full opportunity to be heard therein upon
every question which they present in this an independent
action as a reason for enjoining the board from carrying
out the orders of the court in the other proceeding.

We need only to determine therefore whether or not
under the act the court had the power to retain juris-
diction of the case for the purpose of determining after
a hearing of the parties interested upon any objections
they might desire to urge against the tentative contracts
made and assessment roll prepared by  the  board  of
drainage commissioners under the direction of the court,
and which would not become final until after the court
had approved same.  This is true because the orders of
the court in the case subsequent to January  23,  1917,
would be void and open to collateral attack only if by the
terms of the act it had no power to do otherwise after
confirming the viewers' report but transfer  the  whole
case for further proceedings by the board  of  drainage
commissioners free from and not subject to the control
of the court.  It will be freely conceded that the language
of the act seems to contemplate that the assessment roll
shall be prepared and all contracts for construction shall
be made by the board of drainage commissioners alone
rather than by them subject to the approval of the court,
but there is no word of the act expressly prohibiting the
court from retaining jurisdiction of the case and super-

vision of the actions of the board of drainage commissioners in either the preparation of the assessment roll or making contracts for the construction of the ordered improvement.

To hold that the court must surrender jurisdiction of the proceeding and transfer same absolutely to the board of drainage commissioners for such purposes makes the act unconstitutional to the extent and for the reasons pointed out by this court in Williams v. Wedding, *supra*. If, however, the court may retain jurisdiction of the case and supervision of the actions of the drainage board's action in letting contracts, making assessments, &c., and give to the parties thereto an opportunity to be heard upon the proposed action of the board of drainage commissioners in such matters before such action of the board becomes final and binding upon the landowners in the district every constitutional objection to the act will be removed. This fact alone is a strong argument for the construction of the act as it was interpreted and applied in this case by the trial court, rather than as it was applied in the trial court in the Williams v. Wedding case. The act, by its very terms, confers upon the county court sole, original and exclusive jurisdiction, subject only to the right of appeal by an aggrieved party, of the proceeding to establish and organize drainage districts for the purpose of reclaiming wet, unhealthy and unproductive land. In the recent case of Wilson, Judge v. Dean, 177 Ky. 97, this court held that "in a case where the county court has sole, exclusive and unlimited jurisdiction over the subject matter its jurisdiction is as unlimited as the nature of the subject will admit." In 15 Corpus Juris, page 810, it is said:

"When parties are once rightfully in court the court has jurisdiction over them and that jurisdiction continues, without further notice, and as long as any steps can be rightfully taken in the cause, a court's power to apply a remedy being co-extensive with its jurisdiction over the subject matter; and a court having property in its possession may determine all questions relative to title, possession and control of same. So demands, matters or questions ancillary or incidental to or growing out of the main action and which, also come within the above principles may be taken cognizance of by the court

and determined, for such jurisdiction is in aid of its authority over the principal matter even though the court may thus be called on to consider and decide matters which, as an original cause of action would not be within its cognizance.'' And on page 813 of the same volume:

''The jurisdiction of a court over the incidents of a litigation is of the same character as that over the principal subject matter, and where the jurisdiction of the subject matter is exclusive, jurisdiction over the incidents is also exclusive.''

We are, therefore, convinced that the county court had the power and it was its duty to retain jurisdiction of the case until every incident of the litigation was terminated, and that the mere confirmation of the viewers' report and reference to the drainage commissioners with directions to report, &c., before the very purposes of the act had been attained, would not *ipso facto* exhaust the jurisdiction of the court. If, however, there might be a doubt of the correctness of this conclusion, and we entertain none, it is certain the legislative power and control of the subject matter of the litigation was not exhausted by the act of 1912, and that it might have given the county court, if in fact it had not done so, the power to do exactly as the court in this case did. The legislature of Kentucky at its 1918 session amended the drainage act of 1912 so as to require to be done in such proceedings under that act exactly what was done by the county court in this case, and for the purpose of extending to landowners in the district an opportunity to be heard upon the questions of assessment, &c. In addition the legislature insofar as it could confirmed all proceedings wherein the original act had been applied in the very manner pursued in this case. This is the language by which such confirmation was attempted.

''In all cases now or heretofore pending in which a statement of the costs such as is herein provided for has been filed with or prior to the filing of the assessment roll or with or part of any report by the board of drainage commissioners and upon which there has been an opportunity to file exceptions thereto and for a hearing thereon and notice has been given of such hearing either by publication in some newspaper or by posting notices in the district, such statement of costs, reports and assessment rolls are hereby confirmed and validated; and

all proceedings wherein any county court of this state has attempted to pass upon the assessment roll of the drainage ·commissioners, or any report, or statement of the cost of said proceeding after a notice has been given by publication in some newspaper of the county, in which the drainage district was organized, as to the time and place for the hearing on the same are hereby confirmed, validated and approved, and shall be held to be as valid as if there had been a law authorizing the hearing on the same in existence at the time the said hearing was had and as if the law provided for the hearing and notice as had and given and all said proceedings are hereby validated and made valid."

This act was pleaded by appellees in their answer as validating their acts and the orders of the court above referred to and in bar of appellants' action. The original drainage law was defective only when and because the landowners were not given an opportunity to be heard upon the final assessments against their lands after the entire cost of the improvement was ascertained. In this case they were given that opportunity. The court in the proceeding to establish this drainage district gave to appellants and all the parties to that action the right to be heard which the legislature by the original act should have required to be done, and the subsequent act of the legislature confirming the action of the court in doing in the exercise of its exclusive jurisdiction of the matter what the legislature should originally have required it to do is not an *ex post facto* law in the sense in which such laws are prohibited by the constitution, but is curative only. In discussing this question this court in Marion County v. L. & N. R. R. Co., 91 Ky. 388, said:

"The legislature has the power by a subsequent healing statute to validate a tax levy made without legislative authority, provided it could in advance have authorized the levy. Unquestionably the legislature could in advance of the making of these levies have authorized them, and where this is so it may by a subsequent healing statute validate them though no authority existed at the time of their creation."

Further along in the same case the court says:

"These levies were not for an illegal purpose. They were permissible by legislative authority in advance.

The power to pass the curative act therefore existed and it is equivalent 'to an original authority.''

This case was followed in L. & N. R. R. Co. v. Bullitt County, 92 Ky. 280; Durrett v. Davidson, Sheriff, &c., 122 Ky. 851; Covington & Cincinnati Bridge Co. v. Davison, Sheriff, 31 R. 425; Eastern Kentucky Coal Lands Corp. v. Commonwealth, 127 Ky. 717.

In the case of Durrett v. Davidson, Sheriff, *supra,* the court said:

''The legislative power and control of the subject matter (turnpike taxation) was not exhausted by the act of 1890 and it is a fundamental rule that whatever the legislature might have done originally it can afterwards do in the furtherance of equity and justice and for the purpose of preventing the legislative will from being frustrated.''

We are therefore of the opinion that all of the proceedings in the original case of Hickman and others on petition to establish and organize the Panther creek drainage district were a valid exercise of the jurisdiction of the court and that appellants are bound by the orders and judgments which have never been modified, set aside or appealed from, and 'that they cannot in this, a collateral proceeding, attack the validity of such orders and judgments.

The only remaining question is whether the contract of the drainage board with the McWilliams Northern Dredging Company, a non-resident, is void because of its failure to comply with section 571 of 'the statutes by filing a statement in the office of the secretary of state designating an agent upon which summons might be served, &c.

Such a failure does not under the authorities cited by appellants render the contract void but only voidable at the option of the other party thereto, who may enforce it, but such a delinquent corporation cannot do so. Warren Oil & Gas Co. v. Gardner, 184 Ky. 411. The corporation is not seeking the assistance of the court to enforce the contract in this action. The contract being voidable only it could be ratified by the other party after the delinquent had complied with the law, as was done by the execution of a new contract.

Wherefore the judgment is affirmed.