## Middleton v. Commonwealth.

(Decided May 21, 1920.)

### Appeal from Knox Circuit Court.

1. Criminal Law—There Must be Substantial Prejudice to Authorize Reversal.—A judgment of conviction in a criminal case will not

be reversed for errors appearing in the record unless it affirmatively appears that they were prejudicial to the substantial rights of the defendant.

2. Criminal Law—Statement of Case for Commonwealth.—The attorney for the Commonwealth, in his statement of the case, should confine himself to a brief recital of the facts as they will appear in the evidence and not comment on the character of witnesses that may be introduced.

B. B. GOLDEN, W. F. HALL and ZEB A. STEWART for appellant.

CHARLES I. DAWSON, Attorney General, and THOMAS B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL—Affirming.

John Middleton, the appellant, under an indictment found in the Harlan circuit court, charging him with the murder of Steve Philpot in December, 1918, about eight o'clock at night, was tried in the Knox circuit court, where the case had been taken by a change of venue, and found guilty of voluntary manslaughter and his punishment fixed at confinement in the state penitentiary for a period of twenty-one years.

The evidence as to what occurred at and immediately before the killing of Philpot by Middleton is very brief. For the Commonwealth, the principal evidence consisted in the dying declaration of Philpot, who said that Middleton shot him without cause and when he had not said or done anything to him.

In order to understand Middleton's evidence in his own behalf, it will be necessary to relate some facts and circumstances existing previous to the time he shot and killed Philpot. Middleton was a member of the police force of the town of Harlan, the chief of police being W. Y. Tucker, and some time late in the afternoon of the day Philpot was killed Tucker, in company with Middleton and two or three other policemen, left the town of Harlan and went to the railroad depot for the purpose, as the evidence shows, of arresting a man by the name of Smith, for whom Middleton had a warrant, and to look out for bootleggers and other violators of the law that were in the habit of congregating about the depot at night, and especially about the time the train arrived.

It is undisputed that these policemen were armed with shotguns, rifles and pistols, Middleton having a 45

Colt's revolver. They went together to the depot, and after spending a little while in looking for Smith, for whom Middleton had the warrant of arrest, it appears, according to Middleton's evidence, that "he saw a fellow come across from one of those restaurants (there is a bunch of restaurants down there and poolrooms) and there he saw a fellow come running across the street with a pistol. He ran across on to the walk and I was standing there and I watched him running up this street some distance, and when he got close to me I saw he had a gun. I did not know who he was as the light was not good. He ran up and when he was in thirty or forty feet I saw he had a gun in his hand and after he ran past me I asked him to stop. I said 'hold up there' and he kept on going, and I called him three times to stop and when I called the third time he threw his gun up and made no halt, and then I fired on him. I thought he aimed to kill me when he threw the gun in that position; I did not know it was Philpot or who it was; I fired three shots and Chief Tucker also shot; several shots were fired; I did not know whether I had shot him or not when I fired, but I aimed to hit him to prevent him from shooting me; several guns fired just about the time I shot or just afterwards." He further said that he and Philpot were friendly and had never had any trouble.

It will thus be seen that Middleton's only defense was that he shot in self-defense, believing at the time that the man he shot who was Philpot was going to shoot him. Tucker and other witnesses, who were near, corroborated Middleton in his statement that no shots were fired by him until after he had called to the man who was running across the street two or three times to stop.

There is no complaint about the instructions and the evidence in the case was sufficient to authorize the jury to return the verdict it did; so that unless some error of law was committed by the trial court prejudicial to the substantial rights of Middleton, the judgment must be affirmed.

Counsel for Middleton in their brief point out a number of alleged errors in the conduct of the trial that will be briefly noticed. It seems that after the jurors were selected, but before they were sworn, Middleton filed an affidavit asking that the entire panel be discharged on the ground that one Stephen Philpot, a cousin of the deceased, together with the jailer of Knox county, both of whom, as stated in the affidavit, were men of wide in-

fluence, were taking an active part in the prosecution of Middleton and aiding the Commonwealth in selecting the jury; that on account of the influence of these men and their acquaintance with the jurors, he could not have a fair and impartial trial. The motion to discharge the panel on the ground stated was overruled, and as we think correctly.

It is a matter of common knowledge that in the trial of every case of much importance—civil as well as criminal—the friends or relatives of the contesting parties are present assisting their respective sides in the selection of the jury and in other ways taking an active and conspicuous part in the proceedings, and if such conduct as this on the part of interested friends and relatives was ground for discharging jurors, otherwise qualified and competent, it would seriously interfere with the trial of jury cases, and many times operate to obstruct altogether the conduct of the business of the court.

The next objection relates to the misconduct of the attorney for the Commonwealth in stating the case to the jury. It appears from the bill of exceptions that the attorney said, in the course of his statement, that "Old Tucker" (that is the chief of police) at the headquarters of the police force at the city hall on the night on which Steve Philpot was killed, but before, said that persons had banded over there at the depot to kill him (Tucker); that Tucker was asked at the depot if they were locking for someone and he answered, "Yes, we are going to kill the s— of a b— tonight;" that when Sheriff Howard went to the place where Philpot was killed and asked what the trouble was, young Worth Tucker, nephew of the chief, brandished a weapon in his face and told him not to ask any further questions, and "Old Tucker" with a gun in his hand said "there is a plan on to kill me;" that if "Old Tucker" got on the witness stand they would show that he had killed a number of men before the time Philpot was killed; that Middleton was an ex-convict and had been convicted and sent to the penitentiary for going into a cornfield and killing the only witness against him.

It further appears from the bill of exceptions that several times during the statement of the Commonwealth's attorney, counsel for Middleton objected, and particularly to the parts we have set out, but all of these objections were overruled with an admonition by the court that the Commonwealth's attorney should not go into details in stating the case.

In the statement of the case, the attorney for the Commonwealth should confine himself to a brief recital of the facts as they will appear in the evidence, and not comment on the character of witnesses who may or may not be introduced. Accordingly, we think so much of the statement as declared that "if Tucker got on the witness stand, they would show that he had killed a number of men, and that Middleton had killed in a cornfield the only witness against him in another case" was improper, but we cannot say this evidence was so prejudicial as to authorize a reversal, because Middleton admitted, when offered as a witness in his own behalf, that he had been sent to the penitentiary for life for killing a man, and Tucker that he had been convicted of a felony for killing a boy on a motorcycle.

Complaint is also made that the court erred in permitting evidence as to certain declarations made by Tucker and the other policemen before they left the police station, as well as when they reached the depot, and also in permitting evidence as to the nature of the firearms these policemen carried and certain threatening demonstrations against other persons that were made by Middleton, as well as some of the others. Also in permitting witnesses to relate certain incidents and circumstances concerning these policemen that happened shortly before Philpot was shot.

Some of this evidence was strictly speaking incompetent and irrelevant, but in cases involving facts and circumstances like this one it is extremely difficult—if indeed not impossible—to keep out of the trial irrelevant and incompetent evidence, and our uniform rule is not to reverse judgments on account of the admission of objectionable evidence unless it affirmatively appears that its admission was prejudicial to the substantial rights of the accused, and we do not think this evidence was.

The fact is that there was no little incompetent and irrelevant evidence introduced by both parties, but as we have said it would have been extremely difficult, considering the nature of the case, to keep the evidence within strictly legal limits.

Oliver Cooper, a witness for the Commonwealth, testified in substance that one of the bullets lodged under a large ring on the finger of Philpot, and this ring, together with a large set, which it appears had engraved on it in some way an emblem of the order of Odd Fel-

lows, was exhibited to the jury. When this fact was developed, counsel for Middleton made a motion to discharge the jury upon the ground that there were some members of the order of Odd Fellows on the jury, and the fact that the deceased was an Odd Fellow would be likely to prejudice them against Middleton.

If there were any Odd Fellows on the jury, this fact was only made to appear in the statements of counsel for Middleton, but if there had been members of the order on the jury and they had seen this emblem of the order on the ring worn by Philpot, this would not furnish ground in and of itself for discharging the jury, nor was the evidence admitted concerning this ring incompetent, as the Commonwealth had the right in developing its case to show how many times Philpot was shot, where the bullets entered his body, the course they took and where they were found.

It was also complained that error was committed in permitting the attorney for the Commonwealth to ask Middleton (who was a single man) if he knew a woman by the name of Vina Vicar, and upon his answering that he did, the question was asked if she was not a married woman and if he did not bring her to the city of Barbourville; but objection was made and sustained to these questions.

After reading this record, as well as the brief of counsel, very carefully, our conclusion is that upon the whole no error prejudicial to the substantial rights of Middleton was committed during the trial. According to the evidence for the Commonwealth, made out by the dying declaration of Philpot, his killing was nothing short of cold blooded, deliberate murder, and the only excuse made by Middleton for shooting him is that when he called him to halt, in place of doing so, Philpot drew his pistol, and then Middleton shot him. Whether Middleton killed Philpot under the circumstances stated by Philpot in his dying declaration or for the reasons given by Middleton in his evidence was purely for the jury, and they had the right to accept either theory of the case they pleased.

The judgment is affirmed.