## Weikle, et al. v. Board Drainage Commissioners, Daviess County, et al.

(Decided May 31, 1921.)

### Appeal from Daviess Circuit Court.

1. Drains—Assessments—Interest.—Drainage assessments bear interest both under the act of 1912 and the act of March 28, 1918.

2. Drains—Interest on Assessments and Bonds.—Effect of Long Delay in Beginning Work.—Where a contract for the sale of bonds has been made but never carried into effect, the statute does not contemplate that, after there has been a delay of more than two years in beginning the work, the bonds should be antedated and bear interest during the delay, and the same is true of the assessments.

3. Drains—Constitutional Law—Legislative Power—Curative Statute.—The legislature may cure or validate by subsequent legislation any act which it had the power to authorize in the first instance, provided such legislation does not impair the obligation of the contract or interfere with vested rights.

4. Drains—Contract for Sale of Bonds—Legislative Power—Effect of Validating Statute.—The statute in force when drainage bonds were sold provided that they should not be sold at less than par. The sale was made at less than par. Before the sale was consummated the legislature repealed the statute and enacted in lieu thereof another statute from which the provision that bonds should not be sold at less than par was omitted, and further providing that all contracts theretofore made should be validated; Held, that the contract of sale was validated, inasmuch as the statute simply gave effect to the contract which the parties actually

made, and therefore did not impair the obligation of the contract or interfere with vested rights.

T. F. BIRKHEAD, BEN D. RINGO and J. R. HIGDON for appellants.

J. R. HAYS, W. E. AUD, C. W. WELLS and E. C. CRAIG for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Proceedings for the establishment of the Panther creek drainage district were begun in May, 1912. The case progressed until October, 1917, when, pursuant to notices, bids were taken for the work and reported to the court, together with an assessment roll. The case was set for exceptions and the reports confirmed.

In the month of December, 1917, the McWilliams Northern Dredging Company proposed to purchase the bonds at par, with the further agreement that the funds were to be deposited in a Chicago bank and any interest accruing on the funds so deposited, or on the bonds themselves, should be the property of the company. This bid was accepted. Written notice was given and posted, as required by statute, that the board of drainage commissioners proposed to issue bonds to the amount of $616,-746.65, bearing six per cent interest payable annually, and payable one-tenth on February 10, 1920, and one-tenth each year thereafter on the same date, up to and including February 10, 1929. The notice contained the further provisions that any landowner, not wanting to pay the interest on the bonds, might, within thirty days, pay the county treasurer the full amount of his assessment and have his land released.

Before February 10, 1918, a suit was brought by Nicely and others against Hickman and others, for the purpose of obtaining a new trial on the question of grading the lands in the district. The relief was denied below and the judgment was affirmed by this court on May 21, 1920. Nicely, et al. v. Hickman, et al., 188 Ky. 250, 221 S. W. 566. In the spring of 1918, Yewell and others brought suit against the board of drainage commissioners to enjoin the board from issuing bonds, or carrying out its contracts, or from assessing the lands of plaintiffs to pay for the improvements in the manner or amounts as ordered by the court. Judgment below in favor of the defendants was affirmed on March 12, 1920. Yewell v.

Board of Drainage Commissioners, Daviess County, 187 Ky. 434, 219 S. W. 1049.

On August 17, 1920, a notice was published in two papers of the city of Owensboro to the effect that landowners who had not paid their assessments might do so on or before September 4, 1920, and avoid the issue of bonds against their lands.

On September 13, 1920, the following order was entered:

"The assessment roll of the Panther creek drainage district having been reclaimed from the treasurer of Daviess county, Kentucky, and it having been ascertained that there is due and unpaid on said assessment roll the sum of five hundred eighty-five thousand, one hundred and thirty-nine ($585,139.00), it is now ordered that drainage bonds be issued against the Panther creek drainage district, drainage bonds to the amount of $585,139.00, that said bonds be dated June 20, 1918, that during the years expiring June 20, 1919, and June 20, 1920, only the interest at the rate of six per cent per annum be due and collectible; that for the year ending June 20, 1921, one-tenth of said principal sum, that is $58,513.90, shall be due, together with the interest on all of said principal sum of $585,139.00, and on the 20th day of June of each of the next succeeding nine years a like sum of the principal for one year at the rate of six per cent per annum shall be due, and a levy is now made on all of the land assessed in said Panther creek drainage district upon which the assessment has not been fully paid, to pay the interest past due for two years from June 20, 1918, which interest amounts to the sum of $35,108.34, each of said two years and each landowner who has failed to pay his assessment in full now owes the interest on said land bonds for two years prior to June 20, 1920, at the rate of six per cent per annum, and a levy is now made on said land of said sum of $35,108.34, for each of said years prior to June 20, 1920, and the collection thereof is ordered. For each of the years ending June 20, 1921, 1922, 1923, 1924, 1925, 1926, 1927, 1928, 1929 and 1930, a levy of $58,513.90, together with the interest on all of the unpaid principal of said sum of $585,139.00, at the rate of six per cent per annum, is made against the lands in said Panther creek drainage district, upon which the assessment has not been fully paid, and bonds to anticipate each of said levies are hereby directed to be issued, each bond bearing interest coupons,

one coupon for each year said bond is to run from its date to its full payment, said coupons being, each for interest on said bond for one year, at the rate of six per cent per annum, said bonds to be of the following denominations, viz: Twenty-two bonds for one thousand dollars each, seventy-three bonds for five hundred dollars each and one bond for thirteen dollars and ninety cents, with interest coupons attached as above directed, for the year ending June 20, 1921, and a like number of bonds of similar denominations for each of the nine next succeeding years.

"It is ordered that each of said annual levies herein shall be due and collectible on February 20th in each of said years of 1921, 1922, 1923, 1924, 1925, 1926, 1927, 1928, 1929 and 1930."

This suit was brought by S. Weikle and others against the board of drainage commissioners to enjoin the board from carrying out the foregoing order. Defendants' demurrer to the petition was sustained, except as to that portion complaining of the purpose of the board to make the first series of the bonds mature in three years instead of two years, and the last series in twelve years instead of eleven years, and defendants were enjoined from taking such action. Plaintiffs appeal.

Plaintiffs first insist that the board of drainage commissioners was without authority to provide for the payment of interest on the unpaid assessments, not only because the statute then in force did not require it, but because it would be unjust to do so, in view of the fact that work had never been begun on the improvement. Subsection 32, section 2380, Kentucky Statutes, 1915, provides for the publication of a notice that the drainage commissioners propose to issue bonds for the construction of an improvement. Subsection 34 of the same section provides: "At the expiration of the thirty days after the publication, the board of drainage commissioners may issue bonds for the full amount of the assessment not paid in to the county treasurer, together with the interest thereon, costs of collection, or other incidental expenses," and further, "The board of drainage commissioners shall meet on or before the day such installment is due, and order warrants drawn for the payment thereof and the interest thereon." The words, "together with the interest thereon," in the first provision quoted, necessarily refer to the interest on the assessments, and there is no other word in the context in the

second provision quoted to which the word, "thereon," has reference except the word "installment." It would seem, therefore, that under the act of 1912, the assessments were to bear interest, but if the question be regarded as doubtful under the act of 1912, all doubt has been removed by the act of March 28, 1918, which became a law June 18, 1918. Section 34 of that act provides:

"At the expiration of thirty (30) days after the publication, the board of drainage commissioners may divide the unpaid assessments into annual installments, not less than two nor more than thirty, which shall draw interest at the rate of six per cent per annum, payable annually from thirty days after the date of publication, and may issue bonds to anticipate the collection thereof, which bonds shall mature in series to correspond with the said installments into which the unpaid assessment is divided, and which bonds shall draw interest at the rate of six per cent per annum, payable annually, etc."

It will thus be seen that the latter act provides in terms that the annual installments on the unpaid assessments shall draw interest at the rate of six per cent per annum payable annually from thirty days after the date of publication.

We shall next consider the effect of the delay in beginning the work. It will be observed that by the order of September 13, 1920, the assessments and the bonds which were to be dated June 20, 1918, were to bear interest from that day. This is not a case where the bonds were sold and paid for and there was then a long delay in beginning the work. It is a case where, after a delay of more than two years in beginning the work, it is proposed to issue the bonds and make them, as well as the assessments, bear interest during the long period of delay. While bonds may be sold and issued before the work is begun, the statute contemplates, of course, that the work shall be commenced within a reasonable time. It was never intended that there should be such an unreasonable delay as there has been in this case, and that the bonds should be then dated more than two years back and bear interest during the delay. The same is true with respect to the assessments. The only reason for requiring interest on the assessments is to meet the interest on the bonds, and if the bonds should not bear interest, the assessments should not bear interest. But it is suggested that the rights of the parties should not be affected by the delay, inasmuch as the delay was caused by litigation.

brought by the landowners. As a matter of fact, however, the proceedings were never enjoined. The delay, therefore, was due to the fear that the proceedings might not be valid, and not to the action of any court. That being true, the reason for the delay is not such as to make the rule inapplicable.

Another question presented is whether the contract for the sale of the bonds is valid. The contract is assailed on the ground that the statute in force at the time of its execution provided that the bonds should not be sold at less than par, and the contract was not a sale at par because it gave to the purchaser the right to the interest that had accrued on the bonds or on the proceeds of the bonds when deposited in bank. It may be conceded that this was not a sale at par, and it is true that section 34 of the act of 1912 provided that the bonds should not be sold ''at less than par.'' However, that section was stricken out by the act of March 28, 1918, and there was enacted in lieu thereof, subsection 34, section 2380, vol. 3, Kentucky Statutes, 1918, from which the provision that the bonds should not be sold at less than par has been omitted. The act of March 28 also validates all contracts theretofore made. Subsection 49, section 2380, Kentucky Statutes. These provisions control, as the proceeding was brought under the act of 1912 and continued under the act of March 28, 1918. The question is, what effect did the validating statute have upon the contract for the sale of the bonds? It is the settled rule in this jurisdiction that the legislature may cure or validate by subsequent legislation any act which it had the power to authorize in the first instance, provided such legislation does not impair the obligation of a contract or interfere with vested rights. Marion County v. L. & N. R. Co., 91 Ky. 388, 16 S. W. 1061; L. & N. R. Co. v. Bullitt County, 92 Ky. 280, 17 S. W. 632; Durrett v. Davidson, Sheriff, &c., 122 Ky. 851, 93 S. W. 25, 8 L. R. A. (N. S.) 546; Yewell v. Board of Drainage Commissioners, *supra.* There being no constitutional provision to the contrary, the legislature had the power to provide in the first instance that the bonds might be sold at less than par. The only obstacle in the way of such a sale when the contract was made was the act of the legislature itself. Before the sale was consummated, however, that act was repealed by the act of March 28th, which contains no provision that bonds shall not be sold at less than par, and which expressly validates all

contracts theretofore made. If the sale had been made at par, a different question would be presented, but as the sale was not made at par, the validating statute simply gives effect to the contract actually made by the parties themselves, and therefore does not impair the obligation of the contract or interfere with vested rights. We therefore conclude that the contract for the sale of the bonds at less than par is now valid, but, as before stated, the bonds will have to be dated and issued hereafter and should not be dated so that they will bear interest during the long period of time that the commencement of the work on the improvement has been delayed.

It follows that plaintiffs' prayer for an injunction should have been granted to the extent herein indicated.

Judgment reversed and cause remanded for proceedings consistent with this opinion.

Whole court sitting.